755 So.2d 93 (2000)
Patricia Ann HANKEY, et al., Petitioners,
v.
Susan YARIAN, M.D., et al., Respondents.
No. SC 94384.
Supreme Court of Florida.
March 16, 2000.
*94 Charles Daniel Sikes and Thomas F. Nordlie, Starke, Florida, for Petitioners.
H. Joseph McGuire and M. Kathleen Roddenberry of Smith, Schoder & Roddenberry, P.A., Daytona Beach, Florida; Kurt M. Spengler and Michael R. D'Lugo of Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Orlando, Florida; Lee W. Marcus, Terese M. Latham and Martin B. Unger of Unger, Swartwood, Indest & Acree, P.A., Orlando, Florida, for Respondents.
ANSTEAD, J.
We have for review Hankey v. Yarian, 719 So.2d 987 (Fla. 5th DCA 1998) based on certified direct conflict with the decision in Rothschild v. NME Hospitals, Inc., 707 So.2d 952 (Fla. 4th DCA 1998). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the following reasons, we quash Hankey and approve Rothschild.
At issue is the calculation of the statutory time limitations for filing a medical malpractice action under chapter 766 of the Florida Statutes. Specifically, the question is whether the ninety-day "tolling" period under section 766.106(4), Florida Statutes, plus any other extension agreed to by the parties as provided for under that subsection, suspends the running of the two-year statutory limitation period for filing suit. In Hankey, the Fifth District held that the statutory limitations period was not suspended during the tolling period provided for in section 766.106(4). In Rothschild, the Fourth District held that the running of the limitations period was suspended. We conclude that the tolling period provided by section 766.106(4) does interrupt and suspend the running of the limitations period. Therefore, we approve Rothschild and disapprove Hankey.
The trial court dismissed the complaint of Patricia Ann and Donald Hankey, finding it was not timely filed, and the district court affirmed. See Hankey, 719 So.2d at 988. The district court in Hankey relied on Pergrem v. Horan, 669 So.2d 1150 (Fla. 5th DCA 1996), wherein three years after our decision in Tanner v. Hartog, 618 So.2d 177 (Fla.1993), the Fifth District concluded that under section 766.106(4), "if the notice of intent is mailed well in advance of the end of the statute of limitations period, so that the ninety days and sixty days fall within it, the claimant must file suit before the [original two-year] statute of limitations runs." Id. at 1151. We find error in this interpretation of Tanner by Pergrem and Hankey. Further, applying the method of calculation set out herein to the facts of this case, we find that the Hankeys' complaint was timely filed and therefore quash the ruling below.

MEDICAL MALPRACTICE STATUTORY SCHEME
We begin with a review of the medical malpractice statutory scheme and its purpose, both of which directly affect the resolution of this case. It appears that the Legislature adopted the presuit procedures of chapter 766 based upon a concern about the perceived increase in the amount of medical malpractice claims paid and a perceived corresponding increase in malpractice liability insurance premiums. See § 766.201(1)(b), Fla. Stat. (1997). In section 766.201(2), the Legislature expressly states it was their intent "to provide a plan for prompt resolution of medical negligence claims." Courts have often characterized the legislative intent of the medical malpractice statutory scheme as promoting the "settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding." Cohen v. Dauphinee, 739 So.2d 68, 71 (Fla.1999) (quoting Williams v. Campagnulo, 588 So.2d *95 982, 983 (Fla.1991); see also Patry v. Capps, 633 So.2d 9, 11-12 (Fla.1994)). A key aspect of this statutory scheme is the promotion of settlement options and negotiations between the parties out of court. The provisions for tolling and extending the limitations period are part of this scheme.

LIMITATIONS SCHEME
Pursuant to section 95.11(4)(b), Florida Statutes (1997), an action for medical malpractice must be commenced within two years from the time the incident giving rise to the action occurred or within two years from the time the incident is discovered or should have been discovered with the exercise of due diligence. However, before a claimant can file a medical malpractice suit, chapter 766 prescribes a number of requirements and provisions which seek to enhance the prospect of a settlement, and which affect the running of the limitations period.
First, a claimant must conduct a reasonable investigation to determine if there are grounds for a good faith belief that there was negligence in his care or treatment. See § 766.104(1), Fla. Stat. (1997). After the completion of this presuit investigation, and during the two-year period provided for in section 95.11(4)(b), the claimant must serve a notice of intent to initiate litigation to each prospective defendant. See § 766.106(2), Fla. Stat. (1997). Importantly, as it relates to the limitations issue before us, no suit may be filed for a period of ninety days after this notice of intent is mailed to any prospective defendant.[1]See § 766.106(3)(a), Fla. Stat. (1997). In this regard, section 766.106(4) provides:
[D]uring the 90-day period, the statute of limitation is tolled as to all potential defendants. Upon stipulation by the parties, the 90-day period may be extended and the statute of limitations is tolled during any such extension. Upon receiving notice of termination of negotiations in an extended period, the claimant shall have 60 days or the remainder of the period of the statute of limitations, whichever is greater, within which to file suit.[2]
Finally, by filing a petition to the clerk of the circuit court, a claimant is entitled to an automatic ninety-day extension to the statute of limitations. See § 766.104(2), Fla. Stat. (1997). All of these provisions impact the running of the limitations period, and appear designed to facilitate negotiations between the parties.

CALCULATING THE TIME LIMITATIONS
Initially, the claimant, Patricia Hankey, maintains that the use of the word "tolled" in section 766.106(4) means that the two-year statute of limitations is suspended during the ninety-day period and during any other agreed extension. She maintains that an alternative reading of that statutory provision will effectively and substantially reduce the statutory limitations period in medical malpractice cases. On the other hand, the respondents urge us to find that the statute only has the limited application discussed in Pergrem; or, alternatively, that the word "toll" means only "to bar."[3] Therefore, *96 the respondents maintain that the statute simply provides that a claimant is barred from filing suit during this period, but the time that passes during this time period is still to be counted against the two years allowed for bringing suit.

PLAIN MEANING
It has long been a rule of statutory construction that statutes must be given their plain and obvious meaning and courts should assume that the legislature knew the plain and ordinary meaning of words when it chose to include them in a statute. See Aetna Cas. & Surety Co. v. Huntington Nat'l Bank, 609 So.2d 1315, 1317 (Fla. 1992); Thayer v. State, 335 So.2d 815, 817 (Fla.1976); Sheffield v. Davis, 562 So.2d 384, 386 (Fla. 2d DCA 1990). In Sheffield, as was the case with the Fourth District in Rothschild, the Second District applied the plain meaning of the word "toll" to conclude that the word "tolled" in section 768.57(4), Florida Statutes (1987), the predecessor of section 766.106(4), should be interpreted to mean a "suspension" of the statute of limitations.[4]

OTHER STATUTES
Another way of determining the Legislature's intent in using the word "tolled" in section 766.106(4), is by examining other uses of the word in similar contexts. The Second District also applied this rule in Sheffield. See Sheffield, 562 So.2d at 386. For example, section 95.051, Florida Statutes (1997), provides generally for the tolling of statutory limitations periods:
(1) The running of the time under any statute of limitations except ss. 95.281, 95.35, and 95.36 is tolled by:
(a) Absence from the state of the person to be sued.
(b) Use by the person to be sued of a false name that is unknown to the person entitled to sue so that process cannot be served on the person to be sued.
(c) Concealment in the state of the person to be sued so that process cannot be served on him or her.
(d) The adjudicated incapacity, before the cause of action accrued, of the person entitled to sue. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.
(e) Voluntary payments by the alleged father of the child in paternity actions during the time of the payments.
(f) The payment of any part of the principal or interest of any obligation or liability founded on a written instrument.
(g) The pendency of any arbitral proceeding pertaining to a dispute that is the subject of the action.
(h) The minority or previously adjudicated incapacity of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue; except with respect to the statute of limitations for a claim for medical malpractice as provided in s. 95.11. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.
The "tolling" language in section 90.051 has been routinely and consistently interpreted as suspending the running of the statute of limitations time clock until the identified condition is settled. See Abbott v. Kiser, 654 So.2d 640 (Fla. 4th DCA 1995) (finding wife's suit timely filed because husband's absence from country *97 tolled statute of limitations period applicable to wife's actions to enforce property settlement); Glantzis v. State Auto. Mut. Ins. Co., 573 So.2d 1049 (Fla. 4th DCA 1991) (preventing defendant from relying on the statute of limitations when defendant had accepted a demand for arbitration thereby suspending the statute of limitations under section 95.051(1)(g)).
Because the word "toll" has been consistently used by the Legislature and interpreted by the courts to mean "suspend" when used in a statutory limitations context, we conclude that it was intended to have the same meaning in section 766.106(4). See Sheffield, 562 So.2d at 386. We agree with the Fourth District's concise explanation in Rothschild that: "Since a tolling provision interrupts the running of the statutory limitations period, the statutory time is not counted against the claimant during that ninety-day period. In essence, the clock stops until the tolling period expires and then begins to run again." Rothschild, 707 So.2d at 953.
This construction is also consistent with judicial pronouncements suggesting that the purpose of the ninety-day tolling period in section 766.106 should be liberally construed to give the parties an opportunity to investigate claims, to promote presuit settlement, and to reduce the number of malpractice actions filed in the courts. See Boyd v. Becker, 627 So.2d 481, 484 (Fla. 1993); Stone v. Rosenthal, 665 So.2d 276 (Fla. 4th DCA 1995); Shands Teaching Hosp. & Clinics, Inc. v. Barber, 638 So.2d 570 (Fla. 1st DCA 1994). Additionally, in the medical malpractice statutory context presented here, this Court has stated that medical malpractice statutes should be construed not only in favor of requiring parties to engage in meaningful presuit investigation but also in favor of providing access to courts. See Kukral v. Mekras, 679 So.2d 278, 284 (Fla.1996) (stating that "the medical malpractice statutory scheme must be interpreted liberally so as not to unduly restrict a Florida citizen's constitutionally guaranteed access to the courts, while at the same time carrying out the legislative policy of screening out frivolous lawsuits and defenses"); Boyd v. Becker, 627 So.2d 481, 483 (Fla.1993) (resolving conflict between two statutory provisions in a manner that allows a claim to be considered on its merits rather than banned by judicial construction that applies a more limiting statutory provision). We also agree with the Hankeys that to construe the statute otherwise would effectively reduce the two-year limitations period since a claimant cannot lawfully file an action during the period of suspension and, hence, is deprived of that time to file suit.
Accordingly, we hold the two-year statute of limitations under section 95.11(4)(b) is suspended ("tolled") for ninety days under section 766.106(4) and any extended time agreed to by the parties under that same section.

ADDITIONAL PROVISIONS AFFECTING LIMITATIONS PERIOD
Section 766.106(4) of the statutory scheme also provides that if there are less than sixty days remaining to file suit before the end date of the original two-year limitations period at the time the claimant filed the notice of intent to initiate litigation, then the claimant shall have sixty days from the time when the notice of termination of negotiations is received by him to file suit. If, however, there were more than sixty days remaining to file suit before the end date of the original two-year limitations period when the claimant filed the notice, then the claimant only has the time remaining in the original two-year period to file suit. This provision provides additional time to the limitations period separate and apart from the ninety days of tolling, but only in the limited circumstances set out in the statute where less than sixty days remain to file suit at the time the claimant files the notice of intent. See Tanner v. Hartog, 618 So.2d 177, 183 (Fla.1993). Those circumstances are not present here.

*98 SECTION 766.104(2)
Finally, in addition to the two scenarios involved in section 766.106(4) discussed above, a claimant can also automatically secure an additional ninety-day extension under section 766.104(2) that will be added to the end of both periods described above. Section 766.104(2) provides:
Upon petition to the clerk of the court where the suit will be filed and payment to the clerk of a filing fee not to exceed $25.00, ... an automatic 90-day extension of the statute of limitations shall be granted....
Section 766.104(2) specifically provides that this ninety-day period "shall be in addition to other tolling provisions." Again, we agree with the Fourth District that the "extension" provided for under section 766.104(2) is a genuine extension of time to be added to the limitations period, rather than a tolling (suspension) as provided for under section 766.106(4). In fact, we approved this interpretation of section 766.104(2) in Tanner. See id. at 182. Hence, this time period is to be tacked on to the end of the limitations period and does not run simultaneously with the separate ninety-day tolling period provided in section 766.106(4). See id. ("This automatic extension is separate and additional to any other tolling period.") (citing Novitsky v. Hards, 589 So.2d 404 (Fla. 5th DCA 1991)); Rothschild, 707 So.2d at 953; Kalbach v. Day, 589 So.2d 448, 449-50 (Fla. 4th DCA 1991).

TANNER v. HARTOG
We are not unsympathetic with the Fifth District's interpretation of section 766.106(4) in Hankey and Pergrem. Essentially, the court applied its interpretation of the analysis we adopted in Tanner. The main issue resolved in Tanner concerned the commencement of the limitations period and is unrelated to the issues discussed here. However, in Tanner, the claimants also argued that all of the time periods provided for in section 766.106(4) were to be simply added on to the end of the basic two-year limitations period. See id. at 183. Moreover, because the claimants received the notice of termination from the defendants with less than sixty days remaining before the original statute of limitations was set to expire, they also claimed they were entitled to have the sixty-day additional period under section 766.106(4) also simply added, along with the ninety days aforementioned, to the end of the two-year period. See id. Notwithstanding, we disagreed with their argument and instead adopted the method of calculation employed by the district court in that case.[5]
*99 However, in Tanner we were concerned primarily with the calculation and application of the sixty-day provision in the statute. Specifically, we wrote:
From the date the notice of intent is filed, the plaintiff has ninety days (the amount of the tolling) plus either sixty days or the time that was remaining in the limitations period, whichever is greater, to file suit. We believe the language of section 766.106(4) was intended to provide extra time to a claimant who files a notice of intent shortly before the limitations period expires. This permits the claimant to have the full ninety days in which to try to negotiate a settlement and provides an additional sixty days to file a complaint if a settlement cannot be accomplished. However, the time remaining must be computed from the date the notice of intent was filed, rather than simply adding on the extra time to the end of the limitations period....
Id. at 183-84 (emphasis added). The Fifth District in Pergrem construed our comment about the intent of the "language" in section 766.106(4) as meaning that the only purpose of the entire section was to affect claims filed "shortly before the limitations period expires." We did not intend such a result, but concede that our words may have been less than precise. It is true that the entitlement to any extra time under the sixty-day provision of section 766.106(4) is entirely dependent on when the notice of intent is filed in relation to the time remaining in the original two-year limitations period as discussed earlier. However, the ninety-day tolling provision of section 766.106(4) applies to all cases regardless of when the notice of intent is filed. Thus, the tolling provisions should not be limited to apply only to claims filed "shortly" before the limitations period expires.

THIS CASE
The Fifth District candidly acknowledged that if the limitations period was suspended under the tolling provisions of section 766.106(4), then the Hankeys' complaint was timely filed; whereas if the limitations period was not suspended, then the complaint was untimely. See Hankey, 719 So.2d at 988. The application of the tolling to the facts proves the court correct in its acknowledgment. The limitations period in this case began to run on December 6, 1994, and was scheduled to end on December 6, 1996. The notice of intent, filed on March 19, 1996, suspended the limitations period for ninety days as of the date it was received by the defendants.[6] Additionally, before the defendants responded, the parties agreed to a thirty-day extension, which continued to suspend the limitations period for another thirty days or until the defendants responded to the notice of intent. By July 18, 1996, all the potential defendants had responded to the notice of intent, prompting the limitations period to begin running again. Because as of March 19, 1996, the date the notice of intent was served, more than sixty days remained until the expiration date of the original limitations period (December 6, 1994), the Hankeys were not entitled to any of the sixty days provided under section 766.106(4). Therefore, when the limitations period began running again on July 18, it was set to expire on April 6, 1997.[7] *100 However, as noted, the Hankeys had filed a petition with the clerk of the court for an automatic ninety-day extension under section 766.104(2) on November 20, 1996; thus, the Hankeys had until July 5, 1997, to file suit.[8] The suit in this case was filed on June 19, 1997; therefore, it was timely.

CONCLUSION
In summary, we conclude that the two-year limitations period is suspended temporarily and begins to run again under section 766.106(4) at the expiration of the stated time period or when the defendant responds to the notice of intent. The time of suspension provided under the tolling provision of section 766.106(4) is merely a "time out" that the prospective claimant was allotted by the Legislature that is not to be counted against the two-year limitations period. On the other hand, any additional times added under section 766.106(4) if the notice of intent is filed by the claimant with less than sixty days remaining in the original statute of limitations, or under the automatic ninety-day extension pursuant to section 766.104(2), are actually statutorily granted additions to the initial two years allotted by the statute.
For the foregoing reasons, we approve the decision in Rothschild and quash the Fifth District's decision in Hankey.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] In Boyd v. Becker, 627 So.2d 481, 483-84 (Fla.1993), we held that the statute of limitations is tolled from the time the defendant receives the notice of intent, not from the time the claimant mails it.
[2] The wording of section 766.106(4) makes it appear that the "60 days or the remainder of the period of the statute of limitations" language only applies when the parties have stipulated to an extension of the ninety-day tolling provision. However, this argument was raised and rejected in Rhoades v. Southwest Florida Regional Medical Center, 554 So.2d 1188, 1190-91 (Fla. 2d DCA 1989), wherein the court held that the sixty days or the remainder of the statute of limitations applies to the ninety-day tolling provision, even when no extension has been agreed to. We approved this interpretation in Tanner.
[3] Respondents cite the first part of the definition of the word "toll" in Black's Law Dictionary: "To bar, defeat, or take away; thus to toll the entry, means to deny or take away the right of entry." Black's Law Dictionary 1488 (6th ed.1990). However, the remainder of the definition provides: "To suspend or stop temporarily as the statute of limitations is tolled during the defendant's absence from that jurisdiction and during the plaintiff's minority." Id.
[4] In 1988, section 768.57 was renumbered as 766.106. See § 766.106, Fla. Stat. (Supp. 1988), notes. However, the relevant language of the statute remained unchanged.
[5] The Court approved the following calculation:

[T]he statute of limitations commenced running when the appellants were aware of the stillbirth on April 1, 1988. On February 12, 1990, 47 days prior to the running of the limitations period, the appellants tolled the statute 90 days by filing a notice of intent to initiate medical malpractice litigation pursuant to section 766.104, Florida Statutes. Thereafter, the appellants were entitled to file suit within 90 days plus the greater of either the remainder of the statute of limitations (47 days) or 60 days. Since there were fewer than 60 days remaining on the statute of limitations when the notice of intent letters were mailed, the appellants had 150 days (90 plus 60) from February 12, 1990, or until July 12, 1990, to file suit.
Id. at 183 (quoting Tanner v. Hartog, 593 So.2d 249, 252-53 (Fla. 2d DCA 1992)). Obviously, this calculation allowed for the suspension of the two-year limitation period during the ninety days since the end date of the limitations period was pushed well beyond the original end date of the two-year limitations period. However, the significant issue in our Tanner computation was determining when the sixty-day provision commenced to run. We held that it commenced to run at the end of the ninety-day suspension. Indeed, section 766.106(4) explicitly provides: "Upon receiving notice of termination of negotiations..., the claimant shall have 60 days...." The net effect of our calculation and suspension of the limitations period was to grant the claimants an additional thirteen days, the thirteen days being the difference between the forty-seven days remaining on the two-year statute and the sixty days provided in section 766.106(4). Hence, the Tanners were given the entire two-year period they were entitled to under the statute to file suit, not counting the period of suspension, plus an additional thirteen days for having filed their notice of intent with less than 60 days remaining in the original limitations period.
[6] Although we recognize that we have held that the limitations period is tolled when the defendant received the notice of intent rather then when it is filed by the claimant, see supra, note 1, unfortunately the record in this case does not reflect when this notice of intent was received by the defendants. Notwithstanding, this does not affect the end result of our calculation in this case.
[7] We reach this date by adding 263 days (the time remaining in the original two-year limitations period at the time when the notice of intent was filed), to July 18, 1996, (the date when the limitations period began to run again). This calculation reflects the suspension of the limitations period under section 766.106(4) and provides the claimants with the entire two-year period in which to file suit.
[8] Two of the three respondents allege that the ninety-day period in section 766.104(2) is only intended to allow further time for the reasonable investigation prescribed in section 766.104(1), and the reasonable investigation must occur before the notice of intent is filed. Because the Hankeys did not file for the automatic extension until after they had filed their notice of intent, the respondents maintain that the Hankeys were not entitled to the extension. However, while we agree that the statutory language is somewhat confusing, we cannot accept the respondents' construction in view of the Legislature's express direction that the ninety-day extension may be secured automatically and is in addition to other tolling provisions.