813 So.2d 292 (2002)
Kalani K. BURBANK, Appellant,
v.
Niloufer KERO, M.D., etc., et al., Appellees.
No. 5D00-2781.
District Court of Appeal of Florida, Fifth District.
April 19, 2002.
*293 George A. Vaka, of Vaka, Larson & Johnson, P.L., Tampa, and Gary W. Roberts, of Gary Roberts & Associates, P.A., West Palm Beach, for Appellant.
Shelley H. Leinicke, of Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Ft. Lauderdale, for Appellee, Luciano Sztulman, M.D.
No Appearance for Niloufer Kero, M.D., Niloufer Kero, M.D., P.A., F.A.C.O.G., etc.
PER CURIAM.
Appellant, Kalani K. Burbank ["Burbank"], appeals a summary final judgment in a medical malpractice case based on the expiration of the statute of limitations as to her claim against Luciano Sztulman, M.D. ["Dr. Sztulman"]. We conclude that the statute of limitations had not expired as of the date suit was filed against Dr. Sztulman, and, accordingly, we reverse.
Here is the basic chronology:
4-5-1994 Burbank comes under the care of Niloufer Kero, M.D. ["Dr. Kero"], d/b/a Suncoast Obstetrics and Gynecology, P.A. ["Suncoast"]
10-19-94 Burbank arrives at Oak Hill Hospital ["Oak Hill"] at 3:30 a.m. with severe back pain. She was told that Dr. Sztulman, an employee of Suncoast, would come into see her but he does not. She develops paralysis.
11-19-94 Burbank is discharged from Tampa General. After speaking to Dr. Towsley, it comes to her "like a ton of bricks that something happened, something was wrong, and there was a ball dropped somewhere."
8-95 Burbank hires counsel.
12-22-95 Burbank's counsel requests Burbank's medical records from Oak Hill and Dr. Kero.
1-18-95 Burbank's counsel again writes requesting Burbank's medical records.
9-26-96 A telephone conversation with Dr. Kero's office confirms not all records were sent.
10-1-96 Burbank's petition for extension of the statute of limitations is filed.
10-17-96 Burbank's counsel again asks Dr. Kero for Burbank's medical records.
1-12-97 Service of notices of intent to initiate litigation against Dr. Kero, Suncoast, and Oak Hill.
3-25-97 The claims representative for Oak Hill sends Burbank's counsel 41 pages of previously undisclosed documents including two that indicate that Dr. Sztulman was involved in Burbank's case.
3-31-97 Service of notice of intent to initiate litigation against Dr. Sztulman.
4-7-97 Receipt of notice of intent by Dr. Sztulman.
6-5-97 Suit filed against Oak Hill.
6-30-97 Amended complaint filed adding Dr. Kero, Suncoast, and Dr. Sztulman.
If the statute of limitations began to run on November 19, 1994, the claim would have been barred had it been filed after November 20, 1996 in the absence of any extension or tolling. On September 23, 1996, the plaintiff petitioned the Clerk of *294 Circuit Court for the additional ninety-day extension. As noted by the court in Hankey v. Yarian, 755 So.2d 93 (Fla.2000), the ninety-day period is tacked onto the end of the statute of limitations. With the ninety-day extension authorized by Florida Statute section 766.104(2), the statute of limitations, in the absence of the other tolling provisions, would have run on February 18, 1997. The notice of intent to initiate litigation was sent to Dr. Kero, Suncoast Obstetrics and Gynecology, P.A. and Oak Hill on January 12, 1997. Those notices were received on January 13, 1997. The statute of limitations was then tolled ninety days from the date that the defendant received the notice of intent. See Boyd v. Becker, 627 So.2d 481, 483-484 (Fla.1993). Applying the holding of Hankey and the plain language of section 766.106(4), Florida Statutes, the statute of limitations clock stopped running as to "all potential defendants" for ninety days, or until April 13, 1997.
During the ninety-day period in which the statute of limitations was tolled, Burbank's trial counsel, for the first time, received the records which indicated that Dr. Sztulman had in fact been an attending physician. Notice of intent to initiate litigation was mailed to Dr. Sztulman on March 31, 1997 and received by him on April 7, 1997. At that time, there was still time remaining on the statute of limitations. Because of the tolling effect of the notice of intent, the statute of limitations, as to Sztulman, did not expire until July 6, 1997. On June 9, 1997, Dr. Sztulman's liability insurer denied the claim. Suit was filed against Sztulman on June 30, 1997, before the action was time barred. Thus, the summary final judgment was erroneous as a matter of law.
REVERSED and REMANDED.
PLEUS and PALMER, JJ., concur.
GRIFFIN, J., concurs and concurs specially, with opinion.
GRIFFIN, J., concurring and concurring specially.
I concur in the majority opinion. I also believe that a factual dispute concerning the defendant physicians' refusal to produce medical records showing Dr. Sztulman's involvement with the malpractice precludes summary judgment. The reason document production is required on a timely basis is to allow the plaintiff to perform the required presuit investigation. Medina v. Public Health Trust, 744 So.2d 1142, 1144 (Fla. 3d DCA 1999)(Cope, J., dissenting.) What makes this case different from other cases that have considered the legal effect of a defendant's failure to comply with his or her duty to turn over the medical records is that the missing critical fact in this case is not whether there was malpractice but who was the plaintiffs doctor. There is, at least, a factual dispute about whether the plaintiff knew or should have known that Dr. Sztulman was one of her treating physicians. Plaintiff asserts that his involvement was not known until the records were finally received.
It does appear that Sztulman was still employed by Dr. Kero and Suncoast when they received Burbank's request for medical records, with which they did not comply. If Dr. Sztulman knew the records had been requested and had not been provided, as required by section 766.204, Florida Statutes, equity should estop him from relying on the statutory scheme to avoid answering for his malpractice.
In a normal professional malpractice case, Burbank could simply have filed suit on the day she hired counsel against Oak Hill, Dr. Kero and Suncoast, the individuals known to be involved in her care. *295 Then she could conduct formal discovery under the rules of civil procedure to substantiate her claim and discover whatever facts and additional actors would be revealed in the records. This discovery process would require responses of Dr. Kero, Oak Hill and Suncoast under oath and would provide her with judicial powers of enforcement for their failure to comply with the discovery rules. These would certainly include sanctions for failure to produce medical records, such as the striking of any defenses, including the statute of limitations.
Burbank, on the other hand, was prevented from accessing the court within the two-year statute of limitations by the multiple "conditions precedent" set up by the statute.[1] Her counsel was obliged to file special "certificates" of prior investigation. She had to complete a detailed "presuit investigation" and file a notice of intent to sue accompanied by a verified expert opinion, participate in presuit informal discovery, survive an optional "reasonable basis hearing" and at all times risk some procedural land mine that might trigger one of the many statutory sanctions, or referral of counsel to the Bar for discipline. A physician who is given all these protections by the malpractice statutes ought, in fairness, to be required to meet his own minimal obligations under the medical malpractice statute in order to be allowed to assert the statute of limitations.
I recognize that one court has concluded that failure to provide medical records as required by 766.204(1) does no more than relieve the plaintiff of the requirement of written medical corroboration as otherwise required in chapter 766, Otto v. Rodriguez, 710 So.2d 1 (Fla. 4th DCA 1998), but the language of section 766.204(2) is more broad:
Failure to provide copies of such medical records, or failure to make the charge for copies a reasonable charge, shall constitute evidence of failure of that party to comply with good faith discovery requirements and shall waive the requirement of written medical corroboration by the requesting party.
The provision in subsection 2 of 766.204 that failure to provide copies "shall constitute failure of that party to comply with good faith discovery requirements" has to have some meaning and purpose. Other courts have confirmed that if a plaintiff can show that the health care provider delayed more than ten business days in producing medical records and can also show prejudice, the defenses of the defendant can be stricken. Medina, supra, at 1144. See also De La Torre v. Orta, 785 So.2d 553 (Fla. 3d DCA), review denied, 805 So.2d 808 (Fla.2001); George A. Morris, III, M.D., P.A. v. Ergos, 532 So.2d 1360 (Fla. 2d DCA 1988).
The Supreme Court of Florida said in Kukral v. Mekras, 679 So.2d 278, 280 (Fla. 1996), that Chapter 766, Florida Statutes (1995), sets out a complex presuit investigation procedure that both the claimant and defendant must follow before a medical negligence claim may be brought in court. A medical defendant really has only two obligations under the statutory scheme: (1) to produce the records of the plaintiffs care and, (2) upon receipt of the plaintiff's claim, to conduct an investigation and make a response. I believe a court can say that where a physician has failed to comply with good faith discovery requirements under section 766.204, he can be estopped to assert the statute of limitations, provided the plaintiff can show that the physician's misconduct was the cause of the default. This result would be consistent with the supreme court's prior *296 holdings favoring access to the courts while still carrying out the legislative policy of requiring the parties to engage in meaningful presuit investigations, discovery and negotiations. Kukral, supra at 284.
Last year, in the case of Major League Baseball v. Morsani, 790 So.2d 1071 (Fla. 2001), the supreme court reaffirmed that equity can estop a party from relying on the defense of statute of limitations where his own conduct has caused the plaintiff not to file suit in time. Id. at 1078, 1079. If in the ordinary case an ordinary civil defendant can be deemed to have given up his right to rely on the statute of limitations if necessary to prevent injustice, it should be even more true in a case such as this. Here, an entire statutory scheme has set up a series of barriers to Burbank's ability to file suit within the shortened statute of limitations; it has affirmatively created a set of dire personal penalties for both the lawyer and the client who dares to file suit without having thoroughly investigated and without having an adequate basis to assert a medical malpractice claim. The only countervailing responsibility on the part of the physician protected by these impediments is to turn over the victim's medical records.
As an employee of Dr. Kero and Suncoast, record keeping for Dr. Sztulman was done by the employer, Suncoast. If Dr. Sztulman knew the records were requested and were not turned over, he certainly must be estopped to contend that the plaintiff did not sue him in time. I would go further and say that, even if he did not know, he is bound by the decision of his employer not to turn over the records.
NOTES
[1] Williams v. Campagnulo, 588 So.2d 982 (Fla.1991).