# Third District Court of Appeal

## State of Florida

Opinion filed December 17, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D12-335
Lower Tribunal No. 10-18254
_____

**Aracely Salazar,**
Appellant,

vs.

**Abilio Coello, M.D., et al.,**
Appellees.

An appeal from the Circuit Court for Miami-Dade County, Beatrice A. Butchko, Judge.

Eaton & Wolk and William G. Wolk; Podhurst Orseck, and Joel D. Eaton, for appellant.

Sedgwick LLP and Kimberly A. Cook and Erin E. Dardis, for appellees Martin Moliver, M.D., Opal Hew, C.R.N.A., and Drs. Ellis, Rojas, Ross & Debs, Inc.; Falk, Waas, Hernandez, Cortina, Solomon & Bonner and Scott L. Mendlestein and Tiffany A. Hiller, for appellee Baptist Hospital.

Before SUAREZ, LAGOA, and SALTER, JJ.

SUAREZ, J.

In this medical malpractice action, Plaintiff-Appellant Aracely Salazar

("Salazar") appeals the entry of summary judgment in favor of Defendants-Appellees Martin Moliver, M.D. ("Dr. Moliver"), Opal Hew, CRNA ("Hew") and Drs. Ellis, Rojas, Ross & Debs, Inc., d/b/a Kendall Anesthesia Associates ("KAA").[1] We reverse, finding that Salazar's pre-suit Notice of Intent to Initiate Litigation served on those Defendants/Appellees was timely under Section 766.106, Florida Statutes (2009). We note that the particular factual issue presented in this appeal appears to be an issue of first impression in Florida.

In order to understand the facts of this case, it is necessary to first examine the portions of the statutory provisions which are at the crux of the issue in this appeal:

Florida Statutes Section 766.106 states:

> (2) PRESUIT NOTICE.—
> (a) After completion of presuit investigation pursuant to s. 766.203(2) and prior to filing a complaint for medical negligence, a claimant shall notify each **prospective defendant** by certified mail, return receipt requested, of intent to initiate litigation for medical negligence. Notice to each **prospective defendant** must include, if available, a list of all known health care providers seen by the claimant for the injuries complained of subsequent to the alleged act of negligence, all known health care providers during the 2-year period prior to the alleged act of negligence who treated or evaluated the claimant, copies of all of the medical records relied upon by the expert in signing the affidavit, and the executed authorization form provided in s. 766.1065. …

---

[1] Dr. Moliver, Hew and KAA are sometimes referred to collectively as "the Appellees."

2

(3) PRESUIT INVESTIGATION BY **PROSPECTIVE DEFENDANT.—**
(a) No suit may be filed for a period of 90 days after notice is mailed to any **prospective defendant**. During the 90-day period, the **prospective defendant** or the defendant's insurer or self-insurer shall conduct a review as provided in s. 766.203(3) to determine the liability of the **defendant.** Each insurer or self-insurer shall have a procedure for the prompt investigation, review, and evaluation of claims during the 90-day period. …

(4) SERVICE OF PRESUIT NOTICE AND TOLLING.—The notice of intent to initiate litigation shall be served within the time limits set forth in s. 95.11. However, during the 90-day period, the statute of limitations is tolled as to **all potential** defendants. Upon stipulation by the parties, the 90-day period may be extended and the statute of limitations is tolled during any such extension. Upon receiving notice of termination of negotiations in an extended period, the claimant shall have 60 days or the remainder of the period of the statute of limitations, whichever is greater, within which to file suit. (all emphasis added).

Simply, the issue in this appeal is: does the Section 766.106(3)(a) 90-day tolling of the statute of limitations, effective upon receipt of a notice of intent to initiate litigation, toll the statute of limitations only as to the defendant receiving the notice, or does it also toll the statute of limitations for ninety days as to other likely defendants, known to the claimant but who have yet to be served with a notice of intent to initiate litigation? If the tolling is not effective as to the other likely defendants, then the notices of intent sent to the Appellees were untimely. However, if the 90-day tolling applied to other possible defendants, then Salazar's

3

notices to the Appellees were timely. For the reasons stated below, we find that in this factual scenario, the Section 766.106(3)(a) 90-day tolling of the statute of limitations applied to the Appellees and, therefore, the Notices of Intent to Initiate Litigation sent to the Appellees were timely and summary judgment should not have been entered in their favor.

This lawsuit arises from surgery performed on Salazar on August 22, 2007. Dr. Moliver, Hew and KAA were the anesthesia providers for the surgery. For purposes of this opinion we will assume that Salazar became aware (or should have become aware) shortly after the surgery that Dr. Moliver, Hew and KAA were involved in the surgery. Salazar alleges that as a result of the surgical procedure she suffered a severe right brachial plexus injury. Following the surgery, she became aware that her injury might have been the result of medical malpractice.[2] On August 10, 2009, less than two weeks prior to the running of the two-year statute of limitations, she obtained an automatic ninety-day extension of the statute of limitations pursuant to subsection 766.104(2), Florida Statutes (2009).[3] As a

---

[2] Salazar argues that the trial court improperly determined the date of discovery of her injury. It is not necessary to reach that point in light of our finding that her notices were timely calculated from the date of surgery. For the same reason, we need not address Salazar's claim that Appellees had a "legal relationship" with the hospital at which the surgery occurred.

[3] "Upon petition to the clerk of the court where the suit will be filed and payment to the clerk of a filing fee, not to exceed $42, an automatic 90-day extension of the statute of limitations shall be granted to allow the reasonable investigation required by subsection (1). This period shall be in addition to other tolling periods. No court order is required for the extension to be effective. The provisions of this subsection shall not be deemed to revive a cause of action on which the statute of limitations

result of that extension, the statute of limitations for Salazar's claim as to all medical providers would have expired on November 20, 2009 – i.e. two years and ninety days after the date of the surgery – had she taken no other action.

However, on October 21, 2009, with thirty days remaining on what was then left of the extended statute of limitations, Salazar sent a Notice of Intent to Initiate Litigation to the surgeon who performed the surgery and the hospital at which the surgery was performed.[4] Those notices were received on October 22, 2009. Pursuant to subsection 766.106(3), Salazar could not file her medical malpractice action for ninety days after those notices were received. This is so because subsection 766.106(3)(a) states: "**No** suit may be filed for a period of 90 days after notice is mailed to any **prospective** defendant." [e.s.]. Boyd v. Becker, 627 So. 2d 481, 483-84 (Fla. 1993) (finding that the statute of limitations is tolled from the time the defendant receives the notice).[5] Additionally, and of upmost importance

---

has run."

[4] Salazar's claims against those parties are not at issue in this appeal.

[5] Because Salazar had thirty days remaining on the statute of limitations at the time she sent her notices to the surgeon and the hospital, the ninety-day tolling effectively gave Salazar until February 19, 2010 to send any additional notices of intent or file suit. Specifically, ninety days after October 22, 2009 was January 20, 2010. Adding the remaining thirty days to that date provides a statute of limitations expiration date of February 19, 2010. See Hankey v. Yarian, 755 So. 2d 93, 99-100 n.7 (Fla. 2000). The suit was filed against the surgeon and the hospital on March 23, 2010 consistent with agreements to extend the statute of limitations with those defendants.

in this appeal, Section 766.106(4), states that during this ninety day period "the statute of limitations is tolled as to all **potential defendants**." [e.s.].

Salazar did not send a Notice of Intent to Initiate Litigation to Dr. Moliver, Hew or KAA until February 12, 2010, and those notices were not received until February 16, 2010. Dr. Moliver, Hew and KAA claim that, as to them, the statute of limitations expired on November 20, 2009 and that Salazar's notices were untimely and the action against them had to be dismissed. Salazar argues that by sending the Notices of Intent to Initiate Litigation to the surgeon and the hospital on October 21, 2009, Section 766.106(4) tolled the statute of limitations not only as to the surgeon and the hospital but also as to "all potential defendants" which would include the appellees and, therefore, the Notices to the appellees were timely.

The gist of the Appellees' argument to the trial court, as well as on appeal, is that subsection 766.106(2), requires that, after completion of the statutorily-required presuit investigation, a medical negligence claimant "shall notify each **prospective defendant**" (e.s.) of his or her intent to initiate litigation for medical negligence and that subsection 766.106(4) requires that "[t]he notice of intent to initiate litigation shall be served within the time limits set for the in s. 95.11." Appellees argue that the statute of limitations would have run as to all defendants on November 20, 2009, but prior to that date Salazar sent her Notice of Intent to Initiate Litigation to the surgeon and to the hospital. Appellees concede that as a

6

result of that notice, the statute of limitations did not run as to the surgeon and the hospital because Section 766.106(3) tolled the statute of limitations for an additional 90 days.

Appellees argue, however, that the 90-day tolling does not also apply to them because Salazar became aware shortly after the surgery that the Appellees participated in the surgery and they were therefore "prospective defendants" of Salazar's claim. Appellees assert that, pursuant to Section 766.106(2)(a), the only way Salazar could toll the running of the statute of limitations as to them (as "prospective defendants") was by serving a Notice of Intent to initiate Litigation on each of them prior to November 20, 2009. Appellees posit that once Salazar served them with a Notice of Intent, Section 766.106(4) would have tolled the statute of limitations for 90 days for Salazar to file her lawsuit against them. According to Appellees, Salazar's failure to send Notices of Intent to them prior to November 20, 2009 defeated her claims against them. The trial court agreed and entered summary judgment in their favor on that issue. This appeal followed.

We disagree with the trial court's ruling. We find that the Notices of Intent received by the surgeon and the hospital on October 22, 2009 did toll the statute of limitations, not only as to the surgeon and hospital, but also as to all of Salazar's defendants, however denominated (and regardless of whether they received those notices or not). The October 22, 2009 date of the Notices of Intent to Initiate

7

Litigation sent to the surgeon and hospital is critical for the issues on appeal because subsection 766.106(4) states:

> SERVICE OF PRESUIT NOTICE AND TOLLING.— The notice of intent to initiate litigation shall be served within the time limits set forth in s. 95.11. However, during the 90-day period, the statute of limitations is tolled as to **all** **potential** defendants. Upon stipulation by the parties, the 90-day period may be extended and the statute of limitations is tolled during any such extension. Upon receiving notice of termination of negotiations in an extended period, the claimant shall have 60 days or the remainder of the period of the statute of limitations, whichever is greater, within which to file suit. (emphasis added).

We acknowledge that subsections 766.106(4) and 766.106(2) use different terminology, one uses "prospective defendant" and one uses "potential defendant." The use of the differing terms gives rise to the question of whether the terms are interchangeable or whether the Legislature intended them to have different meanings. After extensive review of the Florida Statutes and the history of Section 766.104 we are unable to conclude that the Florida Legislature intended the different terms to carry different meanings in the context of Chapter 766. Consequently, we hold that subsection 766.106(4) means what it says and that the statute of limitations on Salazar's claims as to <u>any</u> defendant was tolled for a period of ninety days from October 22, 2009 and that Salazar's notices to Appellees were timely as they were sent within the statute of limitations as properly calculated under all of the terms of Section 766.104 and <u>Hankey</u>, 755 So. 2d at, 99-100 n.7 (Fla. 2000).

We base this conclusion on several grounds. First, as was well stated by the court in Apostolico v. Orlando Regional Health Care Systems, Inc., 871 So. 2d 283, 286 n.3 (Fla. 5th DCA (2004) (internal citations omitted):

> In interpreting the Medical Malpractice Act, we are guided by legislative intent. But in doing so, we begin with the proposition that the statutory medical malpractice scheme must be interpreted liberally so as not to unduly restrict a Florida citizen's constitutionally guaranteed access to the courts, while at the same time carrying out the legislative policy of screening out frivolous lawsuits and defenses. … While it is true that the presuit requirements are conditions precedent to instituting a malpractice suit, the provisions of the statute are not intended to deny access to the courts on the basis of technicalities. [] Instead, the presuit notice and screening statute should be construed in a manner that favors access to courts.

See also, Largie v. Gregorian, 913 So. 2d 635, 643 (Fla. 3d DCA 2005) ("In construing this statute liberally, courts have recognized that the statutory intent of the pre-suit investigation and notice requirements was to screen out frivolous lawsuits and alleviate the high costs of medical malpractice claims."). Thus, we begin with the concept that in creating the statutes relating to medical malpractice claims, the Legislature was motivated not only to prevent frivolous claims, but to also ensure claimants full access to the courts. Accordingly, Salazar is not to be deprived of the opportunity to fully prove her claim solely on the basis of potentially confusing terminology in the statutes guiding her access.

We are further supported in our determination that the terms are synonymous by the use of similar terms

9

throughout the Florida Statutes. As the Florida Supreme Court has stated, one "way of determining the Legislative intent in using [a term] is by examining other uses of the word in similar contexts." <u>Hankey</u>, 755 So. 2d at 96.[6] A review of Chapter 766 reveals that subsection 766.202(5) defines "investigate" to mean "that an attorney has reviewed the case against each and every **potential defendant** and has consulted with a medical expert and has obtained a written opinion from said expert." By contrast, as above-quoted, subsection 766.106(2), Florida Statutes (2009) states that after completion of the presuit investigation and prior to filing a complaint "a claimant shall notify each **prospective defendant** by certified mail" of their intent to initiate litigation for medical negligence.[7] Further, section 766.106(6)(b)(3) states:

> Physical and mental examinations.—A **prospective defendant** may require an injured claimant to appear for examination by an appropriate health care provider. The **prospective defendant** shall give reasonable notice in writing to all parties as to the time and place for examination. Unless otherwise impractical, a claimant is required to submit to only one examination on behalf of **all potential defendants**. The practicality of a single examination must be determined by the nature of the

---

[6] The Court in <u>Hankey</u> also held that "toll" as used in subsection 766.106(4) means a suspension of the statute of limitations, stating: "In essence, the clock stops until the tolling period expires and then begins to run again." 755 So. 2d at 797 (quoting <u>Rothschild v. NME Hosps, Inc.</u>, 707 So. 2d 952 (Fla. 4th DCA 1998).

[7] That language is echoed in Florida Rule of Civil Procedure 1.650(b)(1) which states that "Notice of Intent to initiate litigation sent by certified mail to and received by any **prospective** defendant" operates as notice to any other "**prospective**" defendant with a legal relationship to the "**prospective**" defendant receiving notice.

10

claimant's condition, as it relates to the liability of each **prospective defendant**. …. (e.s.).

Thus, within the statutory chapter addressing medical malpractice claims, the Legislature uses the terms "potential" and "prospective" interchangeably and as synonyms, demonstrating that it did not intend the two terms to carry different meanings.

Further evidence of the Legislature's lack of differentiation between the terms is found in sections 400.0233 and 429.293, Florida Statutes (2009), which provide for pre-suit notice and investigation of claims against nursing homes and assisted living facilities respectively. Both those sections use the term "prospective defendant" throughout, including within the subsections which parallel the tolling of the statute of limitations set forth in section 766.106(4).

Finally, the difference in the language in the two subsections has existed since the statute was first enacted in 1985, see Chapters 85-175, § 14 at 1200, Laws of Florida, and has continued to exist throughout the re-enactments of the statute. Nothing in the initial legislative history or any re-enactment indicates any intent for the terms to have a different meaning. See Wood v. Fraiser, 677 So. 2d 15 (Fla. 2d DCA 1996) ("[W]e find it significant that since our judicial interpretation of the interplay between section 95.11(4) (b) and [] section 766.106(4) the legislature has continually reenacted these statutory provisions without any change in the language. We note, in that regard, Florida's well-settled rule of statutory construction that the

legislature is presumed to know the existing law when a statute is enacted, including 'judicial decisions on the subject concerning which it subsequently enacts a statute.'").

Appellees argue that "the intent behind the medical malpractice statutes supports the position that the statute of limitations is tolled only as to the medical provider <u>served with a notice of intent</u>." (Answer Brief at p. 18) (emphasis added). We find nothing in the text of Chapter 766 or any case law interpreting it which supports that conclusion. Likewise, the language of Chapter 766 does not support Appellees' argument that "[t]he purpose of the ninety-day tolling period <u>is not</u> to give a claimant an additional ninety days within which to pursue claims against another healthcare provider not yet served with a notice of intent. … [T]here is nothing in Florida Statutes Section 766.106 that provides that a plaintiff is entitled to the benefit of more than one ninety-day tolling period." (Answer Brief at p. 19-20).[8]

In fact, the only cases that have addressed the difference in language between subsections 766.106(2) and (4) have determined that the tolling applies to all defendants and that multiple tolling periods may exist. In <u>Burbank v. Kero</u>, 813 So. 2d 292 (Fla. 5th DCA 2002) the Fifth District concluded that the two-year

_____

[8] The cases relied upon by Appellees for this point, <u>Melanson v. Agravat</u>, 672 So. 2d 1032 (Fla. 1st DCA 1996), <u>Creel v. Danisi</u>, 868 So. 2d 603 (Fla. 1st DCA 2004) and <u>Stone v. Rosenthal</u>, 665 So. 2d 276 (Fla. 4th DCA 1995) involve attempted multiple notices to the same medical practitioner and thus do not apply to the facts here.

statute of limitations for Burbank's claim would have expired on November 19, 1996 but under <u>Hankey</u>, the ninety-day extension of subsection 766.104(2) "is tacked onto the end of the statute of limitations" and that "in the absence of any other tolling, Burbank's statute of limitations would have expired on February 18, 1997." On January 12, 1997, notices of intent to sue were sent to Dr. Kero, Suncoast OBGYN and Oak Hill Hospital. The court reasoned that in light of those notices, "[t]he statute of limitations was then tolled ninety days from the date that the defendants received the notice." The court also concluded: "Applying the holding of <u>Hankey</u> and the plain language of section 766.106(4) Florida Statutes, the statute of limitations clock stopped running as to 'all potential defendants' for ninety days, or until April 13, 1997." <u>Id.</u> at 294. On March 25, 1997, Oak Hill Hospital sent documents which indicated that a Dr. Sztulman was involved in the incident. Burbank sent a notice of intent to sue Dr. Sztulman on March 31, 1997, and it was received by him on April 7, 1997. Under those facts, the court stated that: "At that time, there was still time remaining on the statute of limitations. Because of the tolling effect of the notice of intent, the statute of limitations, **as to Sztulman**, did not expire until July 6, 1997. (emphasis added)."

Similarly, in <u>CORA Health Services v. Steinbronn</u>, 867 So. 2d 587 (Fla. 5th DCA 2004), the claimant sent notice of intent to Daytona Healthcare Investors, LLC in May 2002, but filed suit against both Daytona and CORA Health Services in October 2002. The statute of limitations for the negligence claim would have

13

expired on December 26, 2002. On January 2, 2003, the claimant sent a notice of intent to CORA. Applying <u>Burbank</u>, the Fifth District found that the statute of limitations for the claim against CORA was affected by the notice to Daytona, stating:

> <u>Two extended ninety-day periods were activated</u> by first the notice to Daytona and then the notice to CORA <u>within the first extended period</u>. Notice to Daytona extended the two-year period prescribed by section 95.11, Florida Statutes, as to CORA because the statute of limitations is tolled as to all *potential defendants* when a notice of intent to initiate litigation is served upon any prospective defendant. ….
>
> More specifically, if the statute of limitations began to run on December 26, 2000, the date of the injury, then the claim would have been barred had it been filed after December 26, 2002, in the absence of any extension or tolling. But the time was tolled for ninety days when Steinbronn served the notice of intent to initiate litigation against Daytona. Assuming receipt of the notice on the day of service, May 20, 2002, the statute of limitations would not expire until March 27, 2003. …

<u>Id</u>. at 589.

Thus, the Fifth District has twice concluded that notice of intent to sue received by one defendant tolls the statute of limitations as to all defendants for the ninety-day period set forth in section 766.106(4). We agree with those decisions and hold that Salazar's Notice of Intent to the surgeon and hospital tolled the statute of limitations as to her claims against Appellees.

Appellees argue that <u>Burbank</u> is distinguishable because the claimant there was unaware of Dr. Sztulman's

14

involvement at the time of her initial notices of intent whereas Salazar knew of Appellees' involvement in her care at all relevant times. We do not read Burbank as relying on that fact for its finding that the statute of limitations was tolled as to all defendants once the original notices of intent were received. We also find that a claimant's absence of knowledge of a medical practitioner's participation in their care may not be the only reason for delaying the sending of a notice of intent. It does not strain the imagination to hypothesize that a claimant may not receive corroborative opinions from medical experts for all claims at the same time. If a claimant is delayed in receiving an opinion from one expert there is no basis in the statutes or the purpose of the legislation for requiring a claimant to delay sending notices to those practitioners as to whom he or she has received the necessary expert opinion. Moreover, to follow Appellees' argument would lead to a multitude of potential hearings in almost every case on the issue of the timing of a claimant's knowledge as to each practitioner's involvement in his or her care. Such proceedings would not serve the legislative purposes of the statutes as such proceedings would add to and not decrease the cost of the claim and would also slow the progress of the claim.

In further support of their claim that notice of intent to one defendant does not toll the statute of limitations as to all defendants, Appellees posit a situation in which there are ten different known but unrelated defendants. Appellees argue that a claimant could extend the statute of limitations nine separate times, thus

15

extending the statute as to the tenth defendant years after the statute applicable to the first noticed defendant. We acknowledge that such an unlikely scenario could exist under Chapter 766, but do not consider its improbable potentiality as a reason to read language into subsection 766.106(4) that does not exist. Additionally, Section 95.11 makes clear that claims based upon negligence must be brought within four years.

In summary, to give the required broad meaning to the language of the controlling statutes and to follow the intent of the Legislature to preclude frivolous claims, but still provide access to the courts, we find that Salazar was not required to send notices of intent to initiate litigation to all practitioners at the same time and that she properly complied with all of the requirements of section 766.106.

We further agree with Salazar that her Complaint against Appellees was timely filed in light of the ninety-day tolling period which arose upon Appellees' receipt of her Notices of Intent. Those notices were received by Appellees on February 16, 2010. At that point, Salazar had three days remaining under the statute of limitations. Upon receipt of the notices by Appellees, under subsection 766.106(4), the statute of limitations was tolled as to Appellees until May 13, 2010. Thereafter, the time for Salazar to file suit was controlled by Florida Rule of Civil Procedure 1.650(d)(3), which provides:

> (3) To avoid being barred by the applicable statute of limitations, an action must be filed within 60 days or the remainder of the time of the statute of limitations after

16

the notice of intent to initiate litigation was received, **whichever is longer**, after the earliest of the following:

> a.    The expiration of 90 days after the date of receipt of the notice of intent to initiate litigation. (emphasis added).

Subsection 766.106(4) also states: "Upon receiving notice of termination of negotiations in an extended period, the claimant shall have 60 days or the remainder of the period of the statute of limitations, whichever is greater, within which to file suit." Thus, Salazar had sixty days from May 13, 2010 within which to file her action against Appellees, since that was a longer period than the three days remaining on the statute of limitations. Salazar's Complaint was filed June 8, 2010, well within that time period.[9]

Reversed and remanded.

---

[9] Salazar also argues that her agreement with the surgeon and the hospital to extend the statute of limitations, as is permitted under subsection 766.106(4), operated to extend the statute of limitations as to her claims against Appellees, but we need not address that argument in light of the timely filing of her claims under Rule 1.650.