790 So.2d 1071 (2001)
MAJOR LEAGUE BASEBALL, et al., Petitioners,
v.
Frank L. MORSANI, etc., et al., Respondents.
No. SC96004.
Supreme Court of Florida.
July 12, 2001.
*1073 John W. Foster, Sr. of Baker & Hostetler LLP, for Petitioners.
Cunningham Clark & Greiwe, P.A., Tampa, FL; and Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, FL, for Respondents.
SHAW, J.
We have for review Morsani v. Major League Baseball, 739 So.2d 610 (Fla. 2d DCA 1999), wherein the district court certified the following question:
Does section 95.051, Florida Statutes (1993), prohibit the application of the doctrine of equitable estoppel to an action filed outside of the applicable statute of limitations?
Morsani, 739 So.2d at 616. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We answer in the negative as explained herein and approve Morsani on this issue.

I. FACTS
The relevant facts are set forth in the district court opinion under review, which provides in part:
The present appeal involves Count I of the plaintiffs complaint, which alleges tortious interference in the acquisition of the Minnesota Twins. The plaintiffs allege that, in 1984, the owners of a majority of the stock of Minnesota Twins, Inc. agreed to sell their controlling interest to the plaintiffs on condition that the plaintiffs first purchase the minority interest from a different party. The plaintiffs subsequently purchased the minority interest for $11,500,000. Thereafter, the majority owners sold their interest to another buyer, and the defendants demanded that the plaintiffs assign the minority interest to the new majority owner for $225,000. At that time, the minority interest in the Minnesota Twins was worth $25,000,000.
The plaintiffs further allege that they agreed to the assignment because the defendants promised that the plaintiffs would be an "absolute front runner" and "at the top of the list" to obtain a majority ownership interest in a baseball franchise in time to begin the 1993 baseball season. The defendants also told the plaintiffs that if they failed to assign the minority interest, the plaintiffs would never own an interest in a major league baseball team. It is undisputed that the plaintiffs never obtained an ownership interest in any major league baseball team, even though Major League Baseball granted other new baseball franchises.
After two more failed attempts to purchase baseball franchises, the plaintiffs filed a complaint, alleging interference with advantageous contractual and business relationships and violation of antitrust laws. The defendants moved for summary judgment claiming that the statute of limitation had run as to Count I. At the hearing on the motion, the plaintiffs conceded that the statute of limitations had run, but argued that the defendants were equitably estopped from raising the statute of limitations because the defendants had induced the plaintiffs to forbear suit on the Minnesota Twins transaction.
The trial court granted summary judgment as to Count I as a matter of law. The trial court found that section 95.051, Florida Statutes (1993), which enumerates the eight specific circumstances that toll the statute of limitations, constitutes a legislatively mandated exclusive catalogue of grounds that can avoid the application of the statute of limitations, as the statute was authoritatively construed by the supreme court in Fulton County Administrator v. Sullivan, *1074 22 Fla. L. Weekly S578 (Fla. Sept. 25, 1997). Because equitable estoppel was not included among the permissible grounds for avoiding the effect of the statute of limitations set out in section 95.051, the trial court held that the plaintiffs' claims were barred by the statute of limitations.
Morsani v. Major League Baseball, 739 So.2d 610, 612-13 (Fla. 2nd DCA 1999) (footnote omitted).[1]
The district court reversed, holding that the doctrine of equitable estoppel can operate to bar a statute of limitations defense. Because of the doubt raised by this Court's decision in Fulton County Administrator v. Sullivan, 22 Fla. L. Weekly S578 (Fla. Sept. 25, 1997),[2] and the district court's decision in Hearndon v. Graham, 710 So.2d 87 (Fla. 1st DCA 1998),[3] the court certified the above question.

II. THE APPLICABLE LAW
The standard of review governing a trial court's ruling on a motion for summary judgment posing a pure question of law is de novo.[4] As a rule, statutes of limitation impose a strict time limit for filing legal actions.[5] The effect of the statutes of limitation, however, can be deflected by several legal theories, including the doctrine of equitable estoppel, as explained below.

A. Statutes of Limitation

At common law, there were no fixed time limits for filing lawsuits.[6] Rather, fixed limitations on actions are predicated on public policy and are a product of modern legislative, rather than judicial, processes.[7] A prime purpose underlying statutes of limitation is to protect defendants *1075 from unfair surprise and stale claims:
"As a statute of [limitations], they afford parties needed protection against the necessity of defending claims which, because of their antiquity, would place the defendant at a grave disadvantage. In such cases how resolutely unfair it would be to award one who has willfully or carelessly slept on his legal rights an opportunity to enforce an unfresh claim against a party who is left to shield himself from liability with nothing more than tattered or faded memories, misplaced or discarded records, and missing or deceased witnesses. Indeed, in such circumstances, the quest for truth might elude even the wisest court."
Nardone v. Reynolds, 333 So.2d 25, 36 (Fla.1976) (quoting Wilkinson v. Harrington, 104 R.I. 224, 243 A.2d 745, 752 (1968)).
Time limitations on legal actions in Florida are governed by the provisions of chapter 95, Florida Statutes (1991). Section 95.11 sets forth the limitations period for an action based on an intentional tort:
95.11 Limitations other than for the recovery of real property.Actions other than for recovery of real property shall be commenced as follows:
. . . .
(3) WITHIN FOUR YEARS.
. . . .
(o) An action for assault, battery, false arrest, malicious prosecution, malicious interference, false imprisonment, or any other intentional tort....
§ 95.11, Fla. Stat. (1991).
Section 95.051 delineates an exclusive list of conditions that can "toll" the running of the statute of limitations:
95.051 When limitations tolled.
(1) The running of the time under any statute of limitations ... is tolled by:
(a) Absence from the state of the person to be sued.
(b) Use by the person to be sued of a false name that is unknown to the person entitled to sue so that process cannot be served on him.
(c) Concealment in the state of the person to be sued so that process cannot be served on him.
(d) The adjudicated incapacity, before the cause of action accrued, of the person entitled to sue. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.
(e) Voluntary payments by the alleged father of the child in paternity actions during the time of the payments.
(f) The payment of any part of the principal or interest of any obligation or liability founded on a written instrument.
(g) The pendency of any arbitral proceeding pertaining to a dispute that is the subject of the action.
(h) The minority or previously adjudicated incapacity of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue; except with respect to the statute of limitations for a claim for medical malpractice as provided in s. 95.11. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.
. . . .
(2) No disability or other reason shall toll the running of any statute of limitations except those specified in this section....
§ 95.051, Fla. Stat. (1991) (emphasis added).
*1076 The Court recently explained that use of the term "toll" in section 95.051 is synonymous with "suspend":
The "tolling" language in section 90.051 has been routinely and consistently interpreted as suspending the running the statute of limitations time clock until the identified condition is settled.
Hankey v. Yarian, 755 So.2d 93, 96 (Fla. 2000) (emphasis added).

B. Equitable Estoppel

The doctrine of equitable estoppel has been a fundamental tenet of Anglo American jurisprudence for centuries:
"Estoppe," says Lord Coke, "cometh of the French word estoupe, from whence the English word stopped; and it is called an estoppel or conclusion, because a man's own act or acceptance stoppeth or closeth up his mouth to allege or plead [otherwise]."
Lancelot Feilding Everest, Everest and Strode's Law of Estoppel 1 (3d ed.1923). The doctrine, which was part of the English common law when the State of Florida was founded, was adopted and codified by the Florida Legislature in 1829.[8]
Equitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position:
"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which perhaps have otherwise existed, either of property or of contract, or of remedy, as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, or of contract or of remedy."
The doctrine of estoppel is applicable in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury.
State ex rel. Watson v. Gray, 48 So.2d 84, 87-88 (Fla.1950) (quoting 3 Pomeroy's Equity Jurisprudence § 804 (5th ed.1941)).
Equitable estoppel differs from other legal theories that may operate to deflect the statute of limitations, such as accrual,[9] tolling,[10] equitable tolling,[11] and *1077 waiver.[12] Equitable estoppel presupposes a legal shortcoming in a party's case that is directly attributable to the opposing party's misconduct. The doctrine bars the wrongdoer from asserting that shortcoming and profiting from his or her own misconduct. Equitable estoppel thus functions as a shield, not a sword, and operates against the wrongdoer, not the victim. This Court has applied the doctrine for more than a century and a half.[13]

III. THE PRESENT CASE
The trial court found that Morsani's cause of action as to Count I accrued no later than August 1984; he filed the present complaint on November 10, 1992. The trial court granted Major League Baseball's motion for summary judgment as to Count I, ruling that the claim was barred by the four-year statute of limitations. The court concluded that because equitable estoppel was not one of the factors listed in section 95.051 as tolling the statute of limitations, the doctrine could not operate to bar Major League Baseball from asserting the statute of limitations defense. The district court reversed, holding that equitable estoppel does not "toll" the statute of limitations and thus is not covered by the exclusionary provisions of section 95.051. We agree.
First, the plain language of the tolling statute limits its reach to conditions that actually "toll" the statute of limitations: "No disability or other reason shall toll the running of any statute of limitation except those specified in this section...."[14] Equitable estoppel, on the other hand, does not "toll" anything. By definition (and by usage throughout the centuries), equitable estoppel "estops" or bars a party from asserting something (e.g., a fact, a rule of law, or a defense) that he or she otherwise would be entitled to assert. The two doctrines are as different as apples and oranges: Tolling operates on the statute of limitations; equitable estoppel operates on the party.
Second, as noted above, equitable estoppel is a deeply rooted, centuries old tenet of the common law. On the other hand, fixed time limitations for filing suit, i.e., statutes of limitation, were unknown at common law and are a creature of modern statute. This Court has held that a statute enacted in derogation of the common *1078 law must be strictly construed and that, even where the Legislature acts in a particular area, the common law remains in effect in that area unless the statute specifically says otherwise[15]:
The presumption is that no change in the common law is intended unless the statute is explicit and clear in that regard. Unless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law.
Thornber v. City of Fort Walton Beach, 568 So.2d 914, 918 (Fla.1990). In the present case, not only does the plain language of section 95.051 not expressly change the common law doctrine of equitable estoppel, it does not mention or allude to that doctrine.[16]
Third, the fundamental purposes served by the statute of limitations and the doctrine of equitable estoppel are congruent. As noted above, a main purpose of the statute of limitations is to protect defendants from unfair surprise and stale claims.[17] A prime purpose of the doctrine of equitable estoppel, on the other hand, is to prevent a party from profiting from his or her wrongdoing. Logic dictates that a defendant cannot be taken by surprise by the late filing of a suit when the defendant's own actions are responsible for the tardiness of the filing. The two concepts, i.e., the statute of limitations and equitable estoppel, thus work hand in hand to achieve a common goal, the prevention of injustice.
Fourth, the overwhelming weight of legal authority supports the conclusion that section 95.051 does not trump the doctrine of equitable estoppel. This Court has recognized equitable estoppel as a bar to a statute of limitations defense both prior to passage of the tolling provision in section 95.051[18] and after passage[19] and has recently limited the reach of the tolling proscription by distinguishing "tolling" from "accrual."[20] Florida's district courts have approved equitable estoppel as a bar to the statute of limitations[21] and federal courts have ruled similarly:

*1079 Though we might well agree with the district court that the unequivocal language of [the statute of limitations] presents an insurmountable barrier to the tolling of the three-year limitations period contained therein, we cannot agree that the "In no event" terms in which the three-year limitations period is expressed forecloses possible application of the separate and distinct doctrine of equitable estoppel. Tolling, strictly speaking, is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the limitations period may be suspended. These are matters in large measure governed by the language of the statute of limitations itself, and thus it is not surprising that several district courts have held that the three-year limitation period ... is not subject to being tolled. Equitable estoppel, however, is a different matter. It is not concerned with the running and suspension of the limitations period, but rather comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. Its application is wholly independent of the limitations period itself and takes its life, not from the language of the statute, but from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice. Thus, because equitable estoppel operates directly on the defendant without abrogating the running of the limitations period as provided by statute, it might apply no matter how unequivocally the applicable limitation s period is expressed.

Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), is instructive in this regard. In that case, the Supreme Court was confronted with a federal statute of limitations that was just as unequivocal as the one before us now. Yet ... the Court held that the doctrine of equitable estoppel applied in suits brought under the statute. In so holding, *1080 the Court reasoned that the principle that no man may take advantage of his own wrongdoing was so deeply rooted in and integral to our jurisprudence that it should be implied in the interstices of every federal cause of action absent some affirmative indication that Congress expressly intended to exclude the application of equitable estoppel.
Bomba v. W.L. Belvidere, Inc., 579 F.2d 1067, 1070 (7th Cir.1978) (citations omitted).[22]
Major League Baseball, on the other hand, cites no cases other than the following to support its position: this Court's unpublished decision in Fulton County Administrator v. Sullivan, 22 Fla. L. Weekly S578 (Fla. Sept. 25, 1997) (which later was withdrawn by this Court[23]); the district court decision in Hearndon v. Graham, 710 So.2d 87 (Fla. 1st DCA 1998) (which later was quashed by this Court[24]); and Putnam Berkley Group, Inc. v. Dinin, 734 So.2d 532 (Fla. 4th DCA 1999) (which relied on the subsequently withdrawn decision in Sullivan).[25]

IV. CONCLUSION
Based on the foregoing, we answer the certified question in the negative and hold that the "tolling" proscription in section 95.051, Florida Statutes (1991), does not embrace the common law doctrine of equitable estoppel, for equitable estoppel is not a "tolling" doctrine. We limit our holding to the narrow issue framed by the certified question and do not address whether any other considerations may operate to restrict use of equitable estoppel in a given case. Nor do we address the viability of equitable estoppel under the facts of the present case. We approve Morsani v. Major League Baseball, 739 So.2d 610 (Fla. 2d DCA 1999), on this issue as explained herein.[26]
It is so ordered.
HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
WELLS, C.J., concurs with an opinion.
WELLS, C.J., concurring.
I concur in the result in this case because I conclude that the majority's reliance on the distinction made between tolling and accrual set out in Bomba v. W.L. Belvidere, Inc., 579 F.2d 1067 (7th Cir. 1978), is correct.
Tolling, strictly speaking, is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the *1081 limitations period may be suspended.... Equitable estoppel, however, is a different matter. It is not concerned with the running and suspension of the limitations period, but rather comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action....
Id. at 1070.
I write to point out that, in my view, this means that a statute of limitations defense can be avoided if the plaintiff properly pleads, pursuant to Florida Rule of Civil Procedure 1.100(a), equitable estoppel in reply to an answer raising the statute of limitations as a defense and then carries the burden of proving this avoidance. I differ with the majority where it indicates that equitable estoppel "bars" the statute of limitations out of concern that practitioners may not discern this necessity of pleading and proof.
I also write to point out that the precise issue which was before this Court in Fulton County Administrator v. Sullivan, 22 Fla. L. Weekly S578 (Fla. Sept. 25, 1997) (unpublished opinion), withdrawn, 753 So.2d 549 (Fla.1999), was an issue of tolling. The certified question from the Fourth District in that case was:
ARE STATUTES OF LIMITATIONS FOR CIVIL ACTIONS TOLLED BY THE FRAUDULENT CONCEALMENT OF THE IDENTITY OF THE DEFENDANT?
See Sullivan v. Fulton County Administrator, 662 So.2d 706, 710 (Fla. 4th DCA 1995). Therefore, this decision does not deal with the same issue.
Finally, I do not agree that the decision in Hearndon v. Graham, 767 So.2d 1179 (Fla.2000), has any bearing on the issue before us in this case.
NOTES
[1] This case also was before the district court several years earlier. See Morsani v. Major League Baseball, 663 So.2d 653 (Fla. 2nd DCA 1995) (holding that the trial court erred in dismissing Morsani's complaint for failure to state a cause of action for tortious interference with an advantageous contractual or business relationship).
[2] Sullivan was a wrongful death action. After Sullivan confessed to killing his wife, his wife's parents filed suit against him. Sullivan claimed that the suit was barred by the two-year statute of limitations; the parents argued that the statute of limitations was tolled by Sullivan's fraudulent concealment of his wrongdoing. This Court held that the statute of limitations was controlling. See Fulton County Administrator v. Sullivan, 22 Fla. L. Weekly S578 (Fla. Sept. 25, 1997). Subsequent to the district court decision in the present case, we granted rehearing in Sullivan, withdrew our opinion, and issued a new opinion holding that the matter was controlled by the Georgia statute of limitations which expressly allowed for tolling based on fraudulent concealment. See Fulton County Administrator v. Sullivan, 753 So.2d 549 (Fla. 1999).
[3] Hearndon was a personal injury action. Hearndon claimed that she had been sexually abused as a child and filed suit against her stepfather, Graham. Graham claimed that the suit was barred by the four-year statute of limitations; Hearndon argued that the statute of limitations was tolled by the delayed discovery doctrine. The district court held the statute of limitations was controlling. See Hearndon v. Graham, 710 So.2d 87 (Fla. 1st DCA 1998). Subsequent to the district court decision in the present case, this Court quashed the district court decision in Hearndon, ruling that the doctrine of delayed discovery applies to the accrual of a cause of action in such a case. See Hearndon v. Graham, 767 So.2d 1179 (Fla.2000).
[4] See, e.g., Philip J. Padovano, Florida Appellate Practice 148 (2nd ed. 1997) ("Summary judgments present a classic example of the type of decisions that are subject to the de novo standard of review.").
[5] See generally § 95.11, Fla. Stat. (1993).
[6] See generally Welles Kahn Co. v. Klein, 81 Fla. 524, 88 So. 315 (1921) (on rehearing).
[7] Id.
[8] Section 2.01, Florida Statutes (1991), provides in full:

2.01 Common law and certain statutes declared in force.The common and statute laws of England which are of a general and not a local nature, with the exception hereinafter mentioned, down to the 4th day of July, 1776, are declared to be of force in this state; provided, the said statutes and common law be not inconsistent with the Constitution and laws of the United States and the acts of the Legislature of this state.
[9] The accrual of a cause of action may be delayed for various reasons including the plaintiff's delayed discovery of the tortious act. See, e.g., Hearndon v. Graham, 767 So.2d 1179, 1186 (Fla.2000) ("We therefore hold that the delayed discovery doctrine applies to the accrual of the instant cause of action based on a claim of childhood sexual abuse accompanied by traumatic amnesiakeeping in mind that by our decision petitioner survives respondent's motion to dismiss.").
[10] Statutory bases for tolling the statute of limitations are set forth in section 95.051, Florida Statutes (1991), and include inter alia the defendant's absence from the state, the defendant's use of a false name, concealment of the defendant, an adjudication of incompetency of the defendant, the payment of any part of an obligation, and the pendency of an arbitral proceeding.
[11] Equitable tolling, which involves no misconduct on the part of the defendant, may delay the running of the limitations period based on the plaintiff's blameless ignorance and the lack of prejudice to the defendant. See, e.g., Machules v. Dept. of Admin., 523 So.2d 1132 (Fla.1988) (holding that the doctrine of equitable tolling operates to toll the running of the twenty-day limitations period where the union of a fired worker filed a contractual grievance on his behalf with the employer, and the employer set a hearing date for one day after the expiration of the twenty-day period, rather than filing an appeal directly with the Department of Administration).
[12] The statute of limitations can be waived. Waiver is the voluntary and intentional relinquishment of a known right, or conduct which implies the voluntary and intentional relinquishment of a known right. See, e.g., Kissimmee Util. Auth. v. Better Plastics, Inc., 526 So.2d 46, 48 (Fla.1988) ("The Authority waived the statute of limitations defense by electing not to plead it even though the Authority claims to have been aware the defense was available.").
[13] See, e.g., Branca v. City of Miramar, 634 So.2d 604 (Fla.1994); Noble v. Yorke, 490 So.2d 29 (Fla.1986); Miami Gardens, Inc. v. Conway, 102 So.2d 622 (Fla.1958); State ex rel. Watson v. Gray, 48 So.2d 84 (Fla.1950); Steen v. Scott, 144 Fla. 702, 198 So. 489 (1940); New York Life Ins. Co. v. Oates, 141 Fla. 164, 192 So. 637 (1939); Coogler v. Rogers, 25 Fla. 853, 7 So. 391 (1889); Collins v. Mitchell, 5 Fla. 364 (1853); Camp v. Moseley, 2 Fla. 171 (1848).
[14] § 95.051(2), Fla. Stat. (1991) (emphasis added).
[15] See State v. Ashley, 701 So.2d 338, 341 (Fla.1997).
[16] See also Silva v. Southwest Florida Blood Bank, Inc., 601 So.2d 1184, 1187 (Fla.1992) ("[A]mbiguity [in a statute of limitations], if there is any, should be construed in favor of the plaintiffs.").
[17] See Nardone v. Reynolds, 333 So.2d 25, 36 (Fla.1976).
[18] See Rabinowitz v. Town of Bay Harbor Islands, 178 So.2d 9, 13 (Fla.1965) ("If the claimant, as a result of such municipal conduct, in good faith fails to act, or acts thereon to his disadvantage, then an estoppel against the requirement of the notice may be said to arise.").
[19] See Barnett Bank of Palm Beach County v. Estate of Read, 493 So.2d 447, 449 (Fla.1986) ("[J]ustice requires us to hold that section 733.702 is a statute of limitations. Valid grounds such as estoppel or fraud, may exist that would and should excuse untimely claims.").
[20] See supra note 9.
[21] See, e.g., Baptist Hospital of Miami, Inc. v. Carter, 658 So.2d 560, 563 (Fla. 3rd DCA 1995) ("It is well settled ... as a general rule... that fraud or misrepresentation that misleads a claimant into a justified failure to assert his rights bars reliance on a statute of limitations."); Alachua County v. Cheshire, 603 So.2d 1334, 1337 (Fla. 1st DCA 1992) ("A party will be estopped from asserting the statute of limitations defense to an admittedly untimely action where his conduct has induced another into forbearing suit within the applicable limitations period."); Jaszay v. H.B. Corp., 598 So.2d 112, 113 (Fla. 4th DCA 1992) ("The appellee is estopped from asserting the limitations defense because it stipulated to the sixty-day extension of the pre-suit screening period."); Glantzis v. State Automobile Mutual Ins. Co., 573 So.2d 1049, 1050 (Fla. 4th DCA 1991) ("[W]e believe the evidence is such that the doctrine of equitable estoppel applies preventing State Auto from resorting to the statute of limitations as a defense."); Olenek v. Bennett, 537 So.2d 160, 161 (Fla. 5th DCA 1989) ("Fairness and equity dictate that the estate is estopped from raising the statute [of limitations] as a defense."); Martin v. Monroe County, 518 So.2d 934, 935 (Fla. 3rd DCA 1987) ("We hold that when the [Department] acknowledges that within the statute of limitations, an accident report of a claim was filed ... it is thereafter estopped after the expiration of the statute of limitations to deny receipt of the claim."); City of Brooksville v. Hernando County, 424 So.2d 846, 848 (Fla. 5th DCA 1982) ("While continuing negotiations regarding settlement do not `toll' the running of a statute of limitation, such negotiations, if infected with an element of deception, may create an estoppel. This is true even subsequent to the 1975 enactment of subsection (2) of section 95.051 which states that `no disability of other reason shall toll the running of any statute of limitations except those specified in this section.'" (footnote and citation omitted)); Cape Cave Corp. v. Lowe, 411 So.2d 887, 889 (Fla. 2nd DCA 1982) ("[A] defendant may by its actions become estopped from claiming the benefit of a statute of limitations."); Salcedo v. Asociacion Cubana, Inc., 368 So.2d 1337, 1339 (Fla. 3rd DCA 1979) ("There can be no doubt that one may in fact be estopped from claiming the benefit of the statute of limitations."); J.A. Cantor Associates, Inc. v. Brenner, 363 So.2d 204, 205 (Fla. 3rd DCA 1978) ("Concerning the statute of limitations, the record shows evidence which, if believed by the jury, would support a jury finding that ... the appellant made fraudulent representations ... so that appellee was misled.").
[22] See also Cange v. Stotler & Co., 913 F.2d 1204, 1209 (7th Cir.1990); Cook v. Deltona Corp., 753 F.2d 1552, 1562-63 (11th Cir. 1985); Darms v. McCulloch Oil Corp., 720 F.2d 490, 494 (8th Cir.1983); Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1043 n. 7 (10th Cir.1980).
[23] See supra note 2.
[24] See supra note 3.
[25] Putnam Berkley was an unauthorized publication case. Dinin sued Putnam for the unauthorized publication of her photo in a book seven years earlier. Putnam claimed that the suit was barred by the four-year statute of limitations; Dinin argued that the cause of action did not accrue until she discovered the unauthorized publication. The district court relied on the unpublished opinion in Sullivan and held that the statute of limitations was controlling. As noted above, Sullivan was subsequently withdrawn on rehearing. See supra note 2.
[26] We decline to address the other claim raised by Major League Baseball because it is outside the scope of the certified question and was not the basis of our discretionary review. As a rule, we eschew addressing a claim that was not first subjected to the crucible of the jurisdictional process set forth in article V, section 3, Florida Constitution.