LEWIS, J., specially
concurring.
I concur in the entirety of the majority opinion in the instant case. I write separately, however, to expand upon several concepts of Florida law that become operative under the circumstances we consider today. In my view, the dissenting opinions approach the analysis of sovereign immunity and its relationship with the doctrine of equitable estoppel from a far different perspective. This perspective does not, in my opinion, afford room for consideration or accommodation of several important decisions and concepts applicable here. While I agree with some concepts expressed by the dissenting view, equitable concepts have a life here, as previously recognized by this Court.
As noted by the majority, the sovereign’s immunity from civil suit is an age-old common law rule, adopted as the law in this state by inclusion of the principle in the Florida Constitution. See art. X, § 13, Fla. Const* Within the Constitution, however, is a provision which allows the Legislature to abrogate the immunity. See id. As detailed in the majority opinion, the Legislature has chosen to waive sovereign immunity and accept tort liability to the same degree “a private person would be liable.” § 768.28, Fla. Stat. (1995). In my view, this statute is extraordinarily clear, and it is important to note that it specifically directs — unless explicitly excluded by the language of the statute — that the state is liable in tort as if it were a private party. The fundamental principle here is that the Legislature has in fact waived immunity and today we are not faced with creating or extending immunity. On the contrary, we must carry out our constitutional responsibility to interpret and apply the statutes which have already done so.[14] This is a difference of perspective in approaching resolution of the problem we confront.
Like sovereign immunity, equitable es-toppel is also a seasoned common law doctrine. Based upon principles of fair play and essential justice, this doctrine may be applied as a shield against otherwise viable defenses. Most assuredly, equitable es-toppel is an age-old doctrine which has been the law in Florida since 1829, and has been applied by this Court for more than a century. See majority op., supra, at 1096-97; Major League Baseball v. Morsani, 790 So.2d 1071, 1076 (Fla.2001). It is triggered when one party “lulls another party into a disadvantageous legal position,” particularly when standing in a fiduciary capacity to the complaining party. Morsani, 790 So.2d at 1076. Based upon the principle that one standing in a fiduciary position must disclose all relevant information to the party depending upon him or her, equitable estoppel simply nullifies the effectiveness of an otherwise valid defense because equity deems that result repugnant to justice. Thus, where a party in such position owes another a duty, fails to fulfill that duty, and also does not disclose the breach to his or her charge, the fiduciary is estopped from asserting that the injured party’s action is barred by a stat *1102 ute of limitations. While equitable concepts may have some limitations when arms-length transactions with total strangers are involved, such principles are more expansive when special relationships are presented.
In Florida, it is well settled that a time limitation provision “does not trump the doctrine of equitable estoppel.” Morsani, 790 So.2d at 1078. In Morsani, this Court stated that it
has recognized equitable estoppel as a bar to a statute of limitations defense both prior to the passage of the tolling provision in section 95.051 and after passage ... Florida’s district courts have approved equitable estoppel as a bar to the statute of limitations and federal courts have ruled similarly....
Id. (footnotes omitted). The rationale of the relationship between equitable estop-pel and a time-limiting statute is that a defendant cannot be taken by surprise by the late filing of an action when the defendant’s own conduct is responsible for the tardiness of the filing. See id.; Baptist Hospital of Miami, Inc. v. Carter, 658 So.2d 560, 563 (Fla. 3d DCA 1995); Alachua County v. Cheshire, 603 So.2d 1334, 1337 (Fla. 1st DCA 1992).
While I agree to a very limited extent with some of the basic elements discussed in the dissent, I have difficulty accepting the expression and discussion of other ideas in such rigid, absolute terms, which are contrary to what I find to be the persuasive authority. I suggest that while the waiver of sovereign immunity is to be strictly construed, the implementing statute must also be considered and applied in light of the manifest purpose to be achieved by the legislation. See Tampa-Hillsborough County Expressway Auth. v. K.E. Morris Alignment Serv., Inc., 444 So.2d 926, 929 (Fla.1983). Sovereign immunity flows from public policy considerations that are centered upon protection of the public treasury from inflated deple-tions and, secondly, principles relating to the administration of government functions in an orderly fashion. Our legislature has determined and declared the public policy of this state in favor of permitting injured citizens to recover damages over the sovereign interest of possessing absolute immunity. The rigidity of the dissenting view does not accommodate this notion, because it expresses the issue from the perspective that this decision is creating the waiver, while I view this decision as interpreting application of the waiver of immunity already existing.
I also conclude that the dissents’ absolutist view, in which Florida’s statutory waiver of sovereign immunity would require unwavering compliance in isolation and a vacuum without exception, is contrary to at least Rabinowitz v. Town of Bay Harbor Islands, 178 So.2d 9 (Fla.1965), in which this Court has previously addressed precisely equitable concepts in the face of strict compliance arguments with regard to statutorily required “notice” in connection with claims against a governmental entity, concluding:
The sum of the holdings in recent years has been that when responsible agents or officials of a city have actual knowledge of the occurrence which causes injury and they pursue an investigation which reveals substantially the same information that the required notice would provide, and they thereafter follow a course of action which would reasonably lead a claimant to conclude that formal notice would be unnecessary, then the filing of such notice may be said to be waived. If the claimant, as a result of such municipal conduct, in good faith fails to act, or acts thereon to his disadvantage, then an estoppel against the requirement of notice may be said to arise.
*1103 Id. at 12-13 (emphasis supplied). Clearly, where a government, or a subdivision thereof, acts in a fashion which fulfills the general requirements of equitable estop-pel, the equitable defense is available to claimants against the governmental entity.[15] This Court has, most assuredly, specifically held that the doctrine of equitable estoppel is available as a shield to defeat a defense based on strict compliance with statutory provisions related to the manner in which claims may be prosecuted against a governmental entity. See, e.g., Rabinowitz, 178 So.2d 9.
Application of well-established and recognized equitable principles existing in the common law when circumstances such as those presented here exist merely operates to implement the stated public policy of this State, not create a waiver, and does not adversely impact the limitations upon the amount of damages that may be recovered, which is now, with a legislatively created waiver, the focal point of the sovereign’s primary concern. See Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1019 (Fla.1979) (recognizing that in organized society, basic governmental policy decisions must be unhampered by the threat of depletion of the public treasury through tort liability); Circuit Court of Twelfth Judicial Circuit v. Dep’t of Natural Res., 339 So.2d 1113, 1116 (Fla.1976) (deeming protection of the state treasury the primary concern expressed in decisions applying the sovereign immunity doctrine); see also Trianon Park Condo. Ass’n, Inc. v. City of Hialeah, 468 So.2d 912 (Fla.1985).
Additionally, I must also respectfully disagree with an analysis and conclusion that we may only look to the Legislature for guidance here.[16] While the statutes waiving the state’s sovereign immunity and limiting the time allowed for filing actions are clearly within the purview of the legislative body and must be strictly construed by courts, common law doctrines such as equitable estoppel, fraudulent concealment, and others remain in effect and fully operative unless the statute specifically states otherwise. See State v. Ashley, 701 So.2d 338, 341 (Fla.1997) (“Unless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, *1104 the statute will not be held to have changed the common law”) (citing Thornbier v. City of Fort Walton Beach, 568 So.2d 914 (Fla.1990)). The immunity-waiving statute, the statute of limitations, and the doctrines of equitable estoppel, fraudulent concealment, and other equitable concepts all work in concert here. The dissenting opinion of Justice Wells correctly states a fundamental principle: the “sovereign cannot be sued in tort except to the extent it waives by statutory law its common law sovereign immunity.” Dissenting op. at 1106. Because, however, section 768.28 specifies that the State waives its immunity “under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state,” nothing prevents those injured and having matters concealed as occurred here from employing the standard equitable principles available to all litigants in actions filed against the state. There is not one word in the statute which provides to the contrary. This Court is not creating a waiver; the Legislature has already done so. We are discussing time limitations-not the creation of a “waiver.”
Additionally, since neither section 768.28 nor section 95.11 of the Florida Statutes abrogates these equitable doctrines, I conclude they certainly remain viable and applicable in Florida and in the instant case. Unless and until the Legislature expressly revokes the application of equitable principles, they are and should be available as viable shields against the assertion that a statute of limitations precludes a party from pursuing a cause of action under circumstances such as those alleged here, which are certainly repugnant to any sense of justice or decency. In my view, the application of the waiver of sovereign immunity on behalf of the State, as urged by the dissents, does not require this Court to ignore fundamental equitable principles available to every litigant in Florida. The dissents’ exclusive attention in this case is to the broad concept of the creation of a waiver of immunity generally, when the attention should focus on a recognition that immunity has unquestionably been waived, but the State is simply attempting to rely upon an internal limitation such as a notice limitation which we have already held to be subject to equitable considerations.
Finally, I cannot find North American Co. v. Green, 120 So.2d 603 (Fla.1960), State Department of Revenue v. Anderson, 403 So.2d 397 (Fla.1981), and Greenhut Construction Co. v. Henry A. Knott Inc., 247 So.2d 517 (Fla. 1st DCA 1971), relating to the principle that “equitable estoppel can effectively be applied against the state only in rare and exceptional circumstances,” applicable here. My reading of these cases reveals that all are distinguishable and totally inapposite to the action and facts presently before this Court.
While each of these opinions certainly contains a discussion of the doctrine of equitable estoppel, as well as language which declares that the State may be es-topped only in rare situations, the holdings of these cases must be considered in the context of the facts before each court. Upon examination of the three decisions, I conclude that none of them address circumstances even remotely similar to the facts presented in the instant cause of action, nor are they controlling here. While they address the applicability of the doctrine of estoppel in general terms, I read these cases to resolve only the scenario in which a private party attempts to bind the state to a certain position or representation made by a state actor at a time preceding a particular dispute.
In North American, the appellant contended that the Comptroller of Florida was “estopped to collect the subject tax because of his earlier administrative deci *1105 sion to rely upon an opinion of the Attorney General to the effect that the tax was not collectible.” 120 So.2d at 610. Likewise, in Anderson, the respondents attempted to hold the state to its previous “long-standing practice of allowing late registration as a dealer to relate back to the time of a sale in order to demonstrate an exemption.” 403 So.2d at 400. Finally, in Greenhut Construction, the court dismissed the appellant’s attempt to estop the Florida Department of General Services from asserting its disqualification as a bidder for a state construction contract based upon “the understanding the latter received from the chief of the bureau of construction.” 247 So.2d at 523. In my view, because these cases address only arms-length transactions, as opposed to the factual situation in which the State has assumed a position of full responsibility for the well-being of a child through state action, the expansive language contained in these opinions which deals with estoppel does not apply to the instant case. I find no Florida authority which rejects or prohibits application of equitable concepts as a shield under circumstances which involve the State assuming a special protective relationship toward a child which has placed the State alone in an authoritative position to protect a child. I believe that equitable estoppel has been applied by this Court in an analogous situation in Rabi-nowitz (which involved a tort action) to preclude a governmental entity from relying on an internal limitation (notice) within a statutory framework of permitting actions against a governmental entity.
I submit that the cases which affirmatively attempt to use the doctrine of estop-pel to bind the State to past policy articulations or remarks' — a different scenario than that now before this Court — are not controlling. Here, S.A.P. does not attempt to affirmatively bind the State to prior representations; she simply seeks to use equitable estoppel as a shield to prevent HRS from profiting from its alleged breach of duty and concomitant concealment of evidence. Because the facts of the instant case and the decisions cited in opposition to this result vary so significantly, in my view it is clear that they have no bearing whatsoever on the instant action. The facts which would support application of equitable concepts have already been set forth on the face of the complaint, and nothing new is being injected into this proceeding.
With the Legislature having so clearly waived sovereign immunity and established that the state “shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances,” and the state having affirmatively assumed a special relationship to protect this child, application of equitable estoppel to avoid the defense of time limitations is not only proper here, I submit that it is the classic case in which such principle finds the very reason for its existence.
ANSTEAD, C.J., and PARIENTE, J., concur.

. The Florida courts have been called upon many times to interpret the scope and applicability of the state’s waiver of sovereign immunity. See, e.g., Beard v. Hambrick, 396 So.2d 708 (Fla.1981); Hill v. Dep’t of Corrections, 513 So.2d 129 (Fla.1987); Triannon Park Condo. Ass'n, Inc. v. City of Hialeah, 468 So.2d 912 (Fla.1985); McClelland v. Cool, 547 So.2d 975, 976 (Fla. 2d DCA 1989). Today, this Court continues this fulfillment of its constitutional duties by analyzing the interaction between the statutory waiver of immunity and the doctrine of equitable estoppel.

. The United States Supreme Court has deemed the doctrine of equitable estoppel applicable to the federal government on a number of occasions, provided that the government engaged in affirmative misconduct. See Heckler v. Cmty. Health Servs. of Crawford County, 467 U.S. 51, 60-61, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); United States v. Pennsylvania Indus. Chem. Corp., 411 U.S. 655, 670-75, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973); Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951); see also Tefel v. Reno, 180 F.3d 1286, 1302-03 (11th Cir.1999); Clark v. United States, 68 F.Supp.2d 1333, 1350-51 (N.D.Ga.1999). Additionally, various states have applied the doctrine of equitable estoppel to prevent governmental entities from asserting time bar or lack of notice as affirmative defenses. See, e.g., Pritchard v. State, 163 Ariz. 427, 788 P.2d 1178, 1183 (1990); Ortega v. Pajaro Valley Unified School Dist., 64 Cal.App.4th 1023, 75 Cal.Rptr.2d 777, 789 (1998); Woodard v. City of Lincoln, 256 Neb. 61, 588 N.W.2d 831, 836 (1999) ("We find no reason to place the tort claims acts outside the reach of the doctrine of equitable estoppel.”); Brown v. City of New York, 264 A.D.2d 493, 694 N.Y.S.2d 461, 462 (1999) (equitably estopping the City from asserting the limitations period due to misconduct); Mercer v. State, 48 Wash.App. 496, 739 P.2d 703, 706 (1987).

. In my view, Spangler v. Florida State Turnpike Authority, 106 So.2d 421 (Fla.1958), is not applicable to the issues addressed by this Court today. While this decision certainly details long-standing principles with regard to the proper construction of statutes waiving the sovereign immunity of government entities, this case only addresses the situation in which "the State Legislature has not waived [an agency's sovereign] immunity” at all. Id. at 423.