910 So.2d 426 (2005)
Ela Barbara SAN PEDRO, Appellant,
v.
John Lazaro SAN PEDRO, Appellee.
No. 4D04-3515.
District Court of Appeal of Florida, Fourth District.
September 21, 2005.
*427 Meah Rothman Tell of Meah Rothman Tell, P.A., Coral Springs, for appellant.
No appearance for appellee.
FARMER, J.
A wife appeals a pre-trial order dismissing her tort claims against her husband in a pending dissolution of marriage action. The order concluded that the statute of limitations had run on the tort claim. We disagree and reverse for consistent proceedings.
The husband filed the action for dissolution of marriage in 2004. She has since filed an amended counter petition for dissolution, asserting separate counts for negligence, fraud and deceit, intentional infliction of emotional distress, and battery, including a battery committed in May 2001. All of these counts were based on her allegations that in 1991 he had knowingly infected her with genital herpes simplex. She further alleged that when she confronted him with her discovery of the infection during the marriage, he asked her not to do anything about it because he would lose his job as a police officer if she told anyone. As for the battery claims, she alleged that he struck her in the face each of the five times they had intercourse in the year 2001.
*428 He denied the allegations and asserted the affirmative defense that the tort counts were barred by the applicable statutes of limitations. Later, he moved for summary judgment on that basis. She sought to avoid the limitations defense by the doctrine of equitable estoppel. She opposed the motion for summary judgment with an affidavit in which she swore that she was first diagnosed with genital herpes in February 1991, that she then confronted her husband, that and he convinced her to remain in the marriage and refrain from doing anything about his conduct because "if she said anything he would lose his job with the ... Police Department and we would lose everything." She further testified that at least once a month over a period of nearly twelve years she told her husband she wanted a divorce, and he told her he would lose his job and she would have nothing. She also swore that she relied on his representations to her detriment by not filing for divorce or filing suit against him. She did not learn her husband would not be fired for having herpes until after he filed for divorce.
The trial court concluded that the evidence was undisputed that she had knowledge of the infection in 1991 and that the statutes of limitations barred her tort claims. The trial court did not appear to address her attempt to avoid the limitations defense by reason of his conduct in inducing her to refrain from asserting her claims earlier. This appeal followed.
Although the husband has not appeared in this appeal to support the order of the trial judge, we ourselves raised the question as to whether the order of dismissal was final for purposes of jurisdiction. We wondered whether the tort claims are "distinct and severable causes of action [and] not interrelated with remaining claims pending in the trial court." S.L.T. Warehouse Co. v. Webb, 304 So.2d 97, 99 (Fla.1974); Mendez v. West Flagler Family Ass'n, Inc., 303 So.2d 1 (Fla.1974) (where separate and distinct cause of action is pleaded which is not interdependent with other pleaded claims, order dismissing it is then appealable in spite of pendency of other claims between parties).
In Waite v. Waite, 618 So.2d 1360 (Fla.1993), the court abrogated the doctrine of interspousal immunity for all torts, thereby allowing spouses to sue one another for damages from tortious acts. The opened door raises an issue as to when such a suit may be brought. In Snedaker v. Snedaker, 660 So.2d 1070 (Fla. 4th DCA 1995), we allowed the tort claim to be brought within the dissolution of marriage action. In Hogan v. Tavzel, 660 So.2d 350 (Fla. 5th DCA 1995), the Fifth District allowed the claim to be brought three years after the marriage had been dissolved. In short, under Florida law an interspousal tort claim may be brought in the dissolution of marriage action, or it may be brought in a separate action not associated with a dissolution of marriage action. If it may be brought as a separate action even after the marriage has been dissolved, we think the tort claim may properly be deemed "separate and distinct" for purposes of Mendez and S.L.T..[1]
*429 Turning to the merits, we conclude that the record fails to show that his motion for summary judgment conclusively disproves her attempt to avoid the limitations defense. For one thing, she clearly alleged that one of the battery claims accrued within four years of the attempt to plead them. A reversal on that ground alone is necessary.
The claims involving the infection of genital herpes arose from events occurring in 1991. In her avoidance of the limitations defense, she pleaded that he convinced her not to raise any complaints about that matter then because the revelation would lead to the loss of his job. She alleges that she forbore from bringing the claim because of his representations and urging. Barring her from raising the claim would not be fair, she argues, because it would allow him to benefit from her subjugation to his plea of forbearance while she suffers from complying with it. That, she contends, is an equitable estoppel.
In Major League Baseball v. Morsani, 790 So.2d 1071 (Fla.2001), the specific question raised was whether Florida statutes of limitations preclude an equitable estoppel to assert a limitations defense. In answering the question negatively, the court explained the origins of equitable estoppel against asserting this defense:
"Equitable estoppel presupposes a legal shortcoming in a party's case that is directly attributable to the opposing party's misconduct. The doctrine bars the wrongdoer from asserting that shortcoming and profiting from his or her own misconduct. Equitable estoppel thus functions as a shield, not a sword, and operates against the wrongdoer, not the victim. This Court has applied the doctrine for more than a century and a half."
790 So.2d at 1077. As for the interplay of the statute and the equitable avoidance, the court explained:
"equitable estoppel is a deeply rooted, centuries old tenet of the common law. On the other hand, fixed time limitations for filing suit, i.e., statutes of limitation, were unknown at common law and are a creature of modern statute. This Court has held that a statute enacted in derogation of the common law must be strictly construed and that, even where the Legislature acts in a particular area, the common law remains in effect in that area unless the statute specifically says otherwise.... In the present case, not only does the plain language of section 95.051 not expressly change the common law doctrine of equitable estoppel, it does not mention or allude to that doctrine."
790 So.2d at 1077-78. Nor, as the court added, are the statute and the equitable avoidance at war with one another:
"a main purpose of the statute of limitations is to protect defendants from unfair surprise and stale claims. A prime purpose of the doctrine of equitable estoppel, on the other hand, is to prevent a party from profiting from his or her wrongdoing. Logic dictates that a defendant cannot be taken by surprise by the late filing of a suit when the defendant's own actions are responsible for *430 the tardiness of the filing. The two concepts, i.e., the statute of limitations and equitable estoppel, thus work hand in hand to achieve a common goal, the prevention of injustice."
790 So.2d at 1078. The court distinguished tolling from equitable estoppel thus:
"Equitable estoppel, however, is a different matter. It is not concerned with the running and suspension of the limitations period, but rather comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. Its application is wholly independent of the limitations period itself and takes its life, not from the language of the statute, but from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice. Thus, because equitable estoppel operates directly on the defendant without abrogating the running of the limitations period as provided by statute, it might apply no matter how unequivocally the applicable limitations period is expressed."
790 So.2d at 1079 (quoting from Bomba v. W.L. Belvidere, Inc., 579 F.2d 1067, 1070 (7th Cir.1978)). As the court also noted, the district courts of this state have not hesitated to approve the use of equitable estoppel to avoid a statute of limitations.[2]
In granting a summary judgment of dismissal on the statute of limitations, the trial court gave no voice to the wife's *431 attempt to avoid the statute by the husband's conduct earlier in the marriage. We do not see any deficiency in her attempt to plead the avoidance, but if there were any pleading defect she should first be given a chance to cure it. As for evidence to support it, her affidavit states facts which if believed by a finder of fact would support a finding that in equity the husband ought not to be heard to assert the statute. We recall that dissolution of marriage proceedings in Florida are in chancery where the principles of equity govern the ultimate resolution. See Rosen v. Rosen, 696 So.2d 697, 700 (Fla.1997) ("proceedings under chapter 61 are in equity and governed by basic rules of fairness as opposed to the strict rule of law."); see also § 61.011, Fla. Stat. (2005) ("Proceedings under this chapter are in chancery."). Thus even if in another context statutory rules might have a wider sweep with a stricter application, proceedings in dissolution of marriage are intended to allow for greater discretion in rules so that justice and equity between the parties may be achieved. Equitable avoidance of rules is inherent in cases under chapter 61.
It was thus error for the trial court to fail to consider the wife's equitable avoidance of the limitations defense. We now return the case to that forum for that purpose and for further consistent proceedings.
Reversed.
KLEIN, J., and MILLER, KAREN M., Associate Judge, concur.
NOTES
[1] In Cerniglia v. Cerniglia, 679 So.2d 1160 (Fla.1996), the court found a tort claim barred by a written settlement agreement reached during a dissolution of marriage action, even though the release provision did not refer specifically to any tort claims. The agreement contained a provision releasing "all claims of whatever nature". 679 So.2d at 1165. The court described the release as intending to bar all claims "arising from the marriage." 679 So.2d at 1164. One commentator has worried that this oblique reference to a tort claim as one "arising from the marriage" may suggest that such tort claims are compulsory claims in dissolution of marriage actions and thus may not be brought after the DOM action is final. See James R. Mitchell, Are Tort Claims Compulsory in a Dissolution of Marriage Action?, 71 FLA. BAR J. 73 (July/August 1997). We do not read Cerniglia to mandate such a conclusion. The language of the release provision in the settlement agreement was simply broad enough to encompass any existing tort claim. The opinion should be read no more broadly than that. We do find merit in the compulsory/permissive claim distinction, however, as the test for ascertaining when a claim is captured by Mendez and S.L.T. for purposes of appellate review.
[2] See e.g. Baptist Hosp. of Miami Inc. v. Carter, 658 So.2d 560, 563 (Fla. 3rd DCA 1995) ("It is well settled ... as a general rule ... that fraud or misrepresentation that misleads a claimant into a justified failure to assert his rights bars reliance on a statute of limitations."); Alachua County v. Cheshire, 603 So.2d 1334, 1337 (Fla. 1st DCA 1992) ("A party will be estopped from asserting the statute of limitations defense to an admittedly untimely action where his conduct has induced another into forbearing suit within the applicable limitations period."); Jaszay v. H.B. Corp., 598 So.2d 112, 113 (Fla. 4th DCA 1992) ("The appellee is estopped from asserting the limitations defense because it stipulated to the sixty-day extension of the pre-suit screening period."); Glantzis v. State Auto. Mut. Ins. Co., 573 So.2d 1049, 1050 (Fla. 4th DCA 1991) ("[W]e believe the evidence is such that the doctrine of equitable estoppel applies preventing State Auto from resorting to the statute of limitations as a defense."); Olenek v. Bennett, 537 So.2d 160, 161 (Fla. 5th DCA 1989) ("Fairness and equity dictate that the estate is estopped from raising the statute [of limitations] as a defense."); Martin v. Monroe County, 518 So.2d 934, 935 (Fla. 3rd DCA 1987) ("We hold that when the [Department] acknowledges that within the statute of limitations, an accident report of a claim was filed ... it is thereafter estopped after the expiration of the statute of limitations to deny receipt of the claim."); City of Brooksville v. Hernando County, 424 So.2d 846, 848 (Fla. 5th DCA 1982) ("While continuing negotiations regarding settlement do not `toll' the running of a statute of limitation, such negotiations, if infected with an element of deception, may create an estoppel. This is true even subsequent to the 1975 enactment of subsection (2) of section 95.051, which states that `no disability or other reason shall toll the running of any statute of limitations except those specified in this section.'" (footnote and citation omitted)); Cape Cave Corp. v. Lowe, 411 So.2d 887, 889 (Fla. 2nd DCA 1982) ("[A] defendant may by its actions become estopped from claiming the benefit of a statute of limitations."); Salcedo v. Asociacion Cubana, Inc., 368 So.2d 1337, 1339 (Fla. 3rd DCA 1979) ("There can be no doubt that one may in fact be estopped from claiming the benefit of the statute of limitations."); J.A. Cantor Assoc. Inc. v. Brenner, 363 So.2d 204, 205 (Fla. 3rd DCA 1978) ("Concerning the statute of limitations, the record shows evidence which, if believed by the jury, would support a jury finding that ... the appellant made fraudulent representations ... so that appellee was misled.").