DAVIS, Chief Judge.
Dr. Ali A. Azima brought suit against Olean Medical Condominium Association. Olean filed a counterclaim against Dr. Azi-ma. On appeal, Olean challenges the trial court’s final judgment resolving these claims. Because the trial court erred by refusing to consider Olean’s statute of limitations affirmative defense, we reverse the portion of the final judgment awarding damages to Dr. Azima.[1] We also reverse the denial of Olean’s counterclaim because the denial of that relief appears to rely in part on the merits of Dr. Azima’s statutorily barred claim.
Dr. Azima owns one unit of a small commercial condominium complex. Maintenance of the common areas of this complex was performed through Olean, although the degree of corporate formality and structure for the periods applicable to the instant complaint are in dispute. Dr. Philip Czyz and his wife Eleonore Czyz, who were two of Olean’s corporate officers, also owned units in the complex, and due to the informal corporate structure of Ole-an at that time, any common upkeep was performed through the couple’s personal business account, with reimbursement from the unit owners as necessary. The complex was insured, but the individual owners were responsible for the upkeep of their own units.
In 2004 the complex sustained damage when Hurricane Charley hit the area. Olean’s insurance policy covered certain damages, and following an on-site visit by an adjuster, an insurance check was given to Mrs. Czyz. She paid for the repair of the common areas of the complex from these funds until they were depleted.
Immediately following the 2004 storm, Dr. Azima noticed water and roof damage to his unit and contacted Mrs. Czyz about roof repair. She responded that Olean was looking for an available roofer to survey the damage to the complex. Dr. Azi-ma apparently took this response as an agreement by Olean to cover the costs of repair to his roof. But when the insurance contractor actually inspected the roof, he concluded that although there was extenT sive roof damage to Dr. Azima’s unit, only a small portion of it was caused by the hurricane. According to the contractor, the majority of the damage was due to the roofs covering and flashing being in poor condition. This led to the instant dispute because while Olean’s insurance policy covered storm damage to common roofing elements, regular unit roof maintenance and repair was the responsibility of unit owners. Dr. Azima threatened suit if his roof repairs were not completed. But in 2005 Olean responded that it had completed the roofing repairs for which it was responsible and that it would not pay for the additional repairs. Dr. Azima then requested copies of Olean’s insurance policies and certain corporate documents. Olean provided him with copies of the policies’ declaration of coverage sheets with its insurance agent’s contact information, but it could not provide complete documentation allegedly because the documents were destroyed in the hurricane.
*564 Although Dr. Azima did not file suit in 2005, he declared that he would not pay his designated portion of the common expenses shared by the unit owners until such time as he was provided the requested documents and his roof repairs were made. In fact, Dr. Azima did not actually file suit until January 20, 2011, instead opting to pursue alternative tactics designed to effectuate Olean’s agreement to cover further repair of the roof and other damage to his unit. When Dr. Azima did file his complaint, Olean raised the statute of limitations as an affirmative defense, claiming that Dr. Azima was barred from filing the claims because more than five years from the accrual of his action had passed. See § 95.11(2)(b), Fla. Stat. (2010) (setting forth the five-year statute of limitations for claims based in contract).[2]
Dr. Azima did not dispute that the time for filing the action had passed. He merely argued to the trial court that Olean was equitably estopped from raising that affirmative defense because of Olean’s actions or, in the alternative, because Olean did not formally exist as an association until 2008. He also argued that equitable tolling should act to toll the time for filing the action where he was lulled or misled into waiting to file suit by Olean’s actions.[3] It is unclear whether the trial court ever formally ruled on Olean’s pretrial motion for summary judgment based on the statute of limitations defense, but the trial court did deny Olean’s motion for judgment of dismissal made at trial, apparently based on Dr. Azima’s estoppel arguments. Following trial, the trial court entered a final judgment dismissing two of Dr. Azi-ma’s claims, finding liability and awarding damages on his third claim, and denying relief on Olean’s counterclaim.
Olean argues on appeal that it was error for the trial court to fail to consider the affirmative defense that Dr. Azima’s claim is barred by the statute of limitations. We agree. Although Dr. Azima maintains that competent, substantial evidence supports the facts on which the trial court’s legal determination is based, neither the facts nor the law support the trial court’s conclusion.
Taken in the light most favorable to Dr. Azima, the facts presented do not, under the doctrine of equitable estoppel, preclude consideration of Olean’s defense. Nothing in Olean’s conduct, intentional or otherwise, prevented Dr. Azima from timely asserting his claims. See Major League Baseball v. Morsani, 790 So.2d 1071, 1076 (Fla.2001) (“Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which perhaps have otherwise existed, either of property or of contract, or of remedy, as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, or of contract or of remedy.” (quoting State ex rel. Watson v. Gray, 48 So.2d 84, 87-88 (Fla.1950))).
Any factual dispute over the interpretation and meaning of Mrs. Czyz’s ini *565 tial statements to Dr. Azima regarding finding a roofer for the repairs is not significant to a determination of the statute of limitations issue. The record is clear that by 2005 the limited scope of the repairs actually covered by the insurance policy was known to all parties and the cause of action had accrued. See § 95.031(1) (“A cause of action accrues when the last element constituting the cause of action occurs”). By 2005, Dr. Azima was aware that Olean was refusing to further cover his additional repairs and he was threatening legal action. Thus, unless otherwise tolled, a five-year limitations period could have expired no later than 2010, rendering Dr. Azima’s 2011 filing of the complaint time-barred.
Furthermore, Dr. Azima did not detrimentally rely on Mrs. Czyz’s initial statements because the majority of the time within which he could have filed suit still remained when he learned in 2005 that Olean would not pay for further repairs. See Delco Oil, Inc. v. Pannu, 856 So.2d 1070, 1073 (Fla. 5th DCA 2003) (“Unlike the plaintiffs in Morsani who had been lulled into complacency by the defendants’ conduct until a date after the statute of limitations had run on their tortious interference claim, here Pannu had actual notice within one month of the date that the lease was signed that the alleged breach had occurred and thus he had [four] years and [eleven] months within which to file a timely breach of contract complaint against Delco. Additionally, and perhaps more importantly, there is no evidence in the record that Delco engaged in any conduct indicating an intent to lull Pannu into a disadvantageous legal position or preventing Pannu from filing his lawsuit within the applicable five[-]year statute of limitations.”).
Moreover, Olean’s failure to turn over corporate and insurance documents did not prevent Dr. Azima from preserving his rights against the association or its individual members by filing the action when it accrued. See Delco, 856 So.2d at 1073 (concluding that defendant’s failure to respond to repeated inquiries was not a basis for equitable estoppel where the plaintiff had actual notice of all necessary facts to bring a lawsuit before the statute of limitations expired).
And there is nothing in the record to support Dr. Azima’s assertion that he detrimentally waited for the corporate documents before filing his action because Ole-an was never formalized as an association until 2008. Regardless of the ambiguous nature of Olean’s corporate status, the parties to the action were always known to Dr. Azima, and he was aware that the Czyzs were acting on behalf of Olean. He also was at least minimally aware of Ole-an’s formal restructuring in 2008, prior to the running of the statute of limitations. Any more details as to the corporate structure or insurance policies were matters appropriately addressed after the filing of the action. See generally Fla. R. Civ. P. 1.250 (describing process for correcting the misjoinder of parties by dropping or adding parties after an action is filed); see also Fla. R. Civ. P. 1.190(e) (allowing for the amendments to pleadings at any time in the furtherance of justice).
Because Dr. Azima had all of the information necessary to file an action against the parties at the time the action accrued and because the information contained in the corporate and insurance documents he claims he waited on to his detriment did not deprive him of his ability to bring suit prior to the running of the statute of limitations, the equitable tolling doctrine also is inapplicable to the instant facts. See Morsani, 790 So.2d at 1076 n. 11 (“Equitable tolling ... involves no misconduct on the part of the defendant ... *566 [and] may delay the running of the limitations period based on the plaintiffs blameless ignorance and the lack of prejudice to the defendant.”).
For these reasons, the trial court erred in concluding that Olean was estopped from asserting that Dr. Azima’s claims were time-barred. The trial court should have considered Olean’s affirmative defense and the application of the statute of limitations to Dr. Azima’s claim. We therefore reverse the portion of the final judgment relating to Dr. Azima’s third claim for damages and remand for proceedings consistent with this opinion. Furthermore, the record clearly indicates that the trial court’s ruling in regard to Olean’s counterclaim for Dr. Azima’s alleged refusal to pay his share of the association fees was at least partially based on the determination on the merits of Dr. Azima’s third claim. Therefore, we also reverse the denial of the counterclaim and remand for the trial court to reconsider the counterclaim in light of this opinion.
Reversed and remanded.
NORTHCUTT and MORRIS, JJ., Concur.

. Neither Olean nor Dr. Azima challenge the dismissal of Dr. Azima’s other two claims. Accordingly, we do not address the applicability of the statute of limitations defense to those claims.

. We note that to the extent Dr. Azima's claim for damages could be read to be based on an allegation of negligence rather than breach, the four-year statute of limitations set forth in section 95.11(3) would apply. But under either theory, Dr. Azima’s 2011 suit was brought after the expiration of the statute of limitations if the cause of action accrued no later than 2005.

. Dr. Azima claims he waited to file suit because Mrs. Czyz originally told him she was seeking a roofer for the repairs and he relied on that information and because Olean failed to provide the requested corporate records and insurance policies.