357 So.2d 217 (1978)
GIFFEN INDUSTRIES OF JACKSONVILLE, INC., a Florida Corporation, Appellant,
v.
SOUTHEASTERN ASSOCIATES, INC., a Florida Corporation, Great American Mortgage Investors, a Massachusetts Business Trust, Appellees.
No. EE-179.
District Court of Appeal of Florida, First District.
March 28, 1978.
Rehearing Denied April 28, 1978.
*218 Ellis E. Neder, Jr., Jacksonville, for appellant.
William E. Scheu, Jr., of Ulmer, Murchison, Ashby & Ball, Jacksonville, for appellees.
McCORD, Chief Judge.
This appeal is from a final summary judgment entered in favor of Great American Mortgage Investors (hereafter sometimes referred to as GAMI). By the judgment the trial court ruled that appellant Giffen Industries of Jacksonville, Inc., (hereafter sometimes referred to as Giffen) was not entitled to a mechanic's lien or an equitable lien on real property sold at public sale pursuant to a final judgment entered in a separate foreclosure suit brought by GAMI or to an equitable lien upon retainage, rental funds or undischarged contract funds held by GAMI.
Appellee Southeastern Associates, Inc., (hereafter sometimes referred to as Southeastern) was the fee simple owner of real property known as the Publix-Pablo Plaza and was also the developer of a construction project thereon. On March 2, 1973, Southeastern executed and delivered to GAMI a note and mortgage on the property securing a $2,527,500 construction loan. The mortgage was recorded, and pursuant to Chapter 713, Florida Statutes, a notice of commencement dated March 2, 1973, was recorded. On May 24, 1973, Giffen entered into a contract with Southeastern to furnish roofing supplies, materials and labor in connection with the construction project. On November 27, 1973, Giffen furnished a "notice to owner" to Southeastern. On September 6, 1974, GAMI filed an action to foreclose its mortgage, and in connection therewith filed a notice of lis pendens. Giffen was not a party defendant to the foreclosure action nor did it intervene therein. The record does not indicate and there was no allegation that GAMI had any knowledge that Giffen was a contractor on the job.
On October 23, 1974, Giffen filed and recorded its claim of lien and on September 16, 1975, Giffen filed the action sub judice seeking to foreclose its mechanic's lien and alternatively to establish and foreclose an equitable lien against Southeastern and GAMI. Subsequently, on November 17, 1975, a final judgment of foreclosure was entered in GAMI's mortgage foreclosure action, and the property was sold at public sale on December 12, 1975. Later, on January 6, 1976, Giffen's complaint in the action sub judice was dismissed and Giffen subsequently filed a four-count amended complaint seeking (1) to foreclose its mechanic's lien against Southeastern, (2) to seek breach of contract damages against Southeastern, (3) to impress an equitable lien upon retainage, rental funds, and undisbursed contract funds held by GAMI, (4) to impress an equitable lien upon the real property in the amount of Giffen's claim of lien. GAMI then moved for summary judgment which was granted, and this appeal was taken therefrom. In entering the summary judgment, the trial court found that Giffen's action to foreclose or impress a lien upon the real property in question is barred by *219 GAMI's notice of lis pendens, and the final judgment of foreclosure and that summary judgment should be entered in GAMI's favor.
GAMI's notice of lis pendens, filed prior to Giffen's claim of mechanic's lien, is a bar to Giffen's foreclosure of mechanic's lien. § 48.23(1)(b), Florida Statutes, provides in pertinent part as follows:
"The filing for record of such notice of lis pendens shall constitute a bar to the enforcement against the property described in said notice of lis pendens of all liens including but not limited to federal tax liens and levies, unrecorded at the time of filing for record such notice of lis pendens unless the holder of any such unrecorded lien shall intervene in such proceedings within 20 days after the filing and recording of said notice of lis pendens, and if the holder of any such unrecorded lien does not intervene in the proceedings, and if such proceedings are prosecuted to a judicial sale of the property described in said notice of lis pendens, the said property shall be forever discharged from all such unrecorded liens... ."
§ 713.05, Florida Statutes, upon which Giffen relies for its mechanic's lien expressly provides that, "No lien under this section shall be acquired until a claim of lien is recorded." Giffen contends that under the mechanic's lien law, its interest relates back to the date of the filing of the notice of commencement of construction, but the above quoted portion of § 713.05, construed in conjunction with the lis pendens statute, clearly reveals that since Giffen had not recorded the mechanic's lien at the time the lis pendens notice was filed, enforcement of its subsequently acquired lien is barred by § 48.23, Florida Statutes.
We turn now to Giffen's contention that it is entitled to an equitable lien upon the retainage, rental funds and undisbursed construction loan funds and upon the real property which has been foreclosed by GAMI. Unless there is fraud on the part of a mortgagee or unless a mortgagee has in some way induced a materialman or laborer to forego taking action which would have protected his interest, such materialman or laborer would have no claim for an equitable lien superior to the mortgage lien of the mortgagee subject to certain exceptions which we will subsequently discuss. There is no claim of fraud on the part of GAMI nor is there a claim that GAMI induced Giffen to take or forego any action to its detriment. Giffen does contend, however, that GAMI continued to release mortgage funds to Southeastern for continuation of the construction at a time when Southeastern was in default on the mortgage, and as a result, Giffen did additional construction for which it has not been paid. That contention would not constitute a basis for an equitable lien if GAMI foreclosed upon an uncompleted construction project. We agree with the well-reasoned opinion of Judge Stephen H. Grimes, in J.G. Plumbing Service, Inc. v. Coastal Mortgage Co., 329 So.2d 393 (Fla. 2d DCA 1976), in which our sister court of the Second District was involved with a related question to the one which is before us. There the court said:
"This case involves the question of whether a construction mortgage lender on an unfinished construction project runs the risk of unpaid contractors and materialmen obtaining liens upon the undisbursed loan funds because of its failure to promptly notify them of a default in the mortgage."
* * * * * *
"The essence of the affirmative defenses and the counterclaim is that Plumbing is entitled to an equitable lien in the undisbursed construction loan proceeds because Coastal knew of Goba's defaults upon which it based its foreclosure action but delayed in asserting its rights thereby allowing Plumbing to continue to supply services, materials and labor to the job so as to enhance the value of the property upon which Coastal intended to foreclose... ."
* * * * * *
"If all the funds called for under the loan agreement have not been disbursed by the time construction has been completed, *220 the construction lender then has more security than it bargained for. Should a default then occur, the mortgage lender will be in the position of being able to foreclose upon (and perhaps buy in) a completed building even though it has not yet disbursed all of the construction loan money. Under these circumstances, the Fourth District Court of Appeal recently held that a contractor who had completed the construction in accordance with his construction agreement was entitled to an equitable lien against the undisbursed balance of construction loan funds under the construction loan agreement. Morgen-Oswood & Associates, Inc., of Florida v. Continental Mortgage Investors, Fla.App. 4th, 1975, 323 So.2d 684. In essence, that was a case in which relief was granted in order to avoid an unjust enrichment."
"We do not believe that this principle can be extended to a situation where the default occurs before the construction contemplated by the loan agreement has been completed. Under these circumstances, the construction lender is left with the remedy of foreclosing upon a partially completed building. More often than not, the market value of a partially constructed building will be substantially less than the total cost of the labor and material which had already been incorporated into its construction. Under these circumstances, it cannot be said that the mortgagee has been unjustly enriched. To adopt the rule urged by appellant would place upon construction lenders the unwarranted duty of affirmatively keeping all of the subcontractors and materialmen advised of the status of the mortgage and might even discourage a mortgage lender from working with its mortgagor so as to enable him to correct his default and to complete the job."
The court went on to say:
"In the context of the instant case and consistent with Hall's, we readily agree that a construction lender should not be permitted to affirmatively mislead subcontractors and materialmen so as to induce them to continue to work upon and supply materials to the job to their detriment. A construction lender who falsely advises a materialman or subcontractor that the mortgage is not in default must suffer the consequences if further work and materials are incorporated into the project in reliance thereon. Such action would be equivalent to the fraud and misrepresentation which the courts have traditionally sought to remedy where possible through the imposition of an equitable lien. See Schraub v. Charest, Fla. App. 3d, 1973, 277 So.2d 814."
In Snead Const. v. First Federal S & L Assn., 342 So.2d 517 (Fla. 1st DCA 1977), appellant, a prime contractor for three motel projects in Daytona Beach, sought to impose a trust on undisbursed construction funds in the hands of the mortgage lender. There this Court said:
"Snead's case for imposing a trust on the undisbursed construction funds in the hands of the lenders is also unavailing. Construction is incomplete and funds are yet required for its completion. See J.G. Plumbing Serv., Inc. v. Coastal Mtg. Co., 329 So.2d 393 (Fla.App. 2d, 1976). Contrast Morgen-Oswood & Assoc., Inc. v. Continental Mtg. Investors, 323 So.2d 684 (Fla.App. 4th, 1976), and Fred S. Conrad Constr. Co. v. Continental Assur. Co., 215 So.2d 45 (Fla.App. 1st, 1968). The lenders here are not guilty of fraud or misrepresentation and have not gained any inequitable advantage merely by holding funds which may be necessary to complete construction."
This Court's opinion in Fred S. Conrad Constr. Co. v. Continental Assur. Co., cited above, was also discussed in the opinion of the District Court of Appeal, Second District in J.G. Plumbing Service, Inc. There, the Second District Court pointed out that it could not determine from the opinion in Conrad whether or not the housing project for which the money had been loaned was completed. In Conrad this Court ruled that appellants had stated a cause of action for relief up to the remaining balance of undisbursed funds on the construction loan but the opinion did not state whether or not construction had been *221 completed. Since we consider that completion of construction is critical to whether or not a materialman or laborer is entitled to relief against undisbursed proceeds, we have examined the case file in Conrad and find an undisputed statement in the brief of appellants that the construction was completed. We did not, however, find any statement in the record either supporting or not supporting the statement in appellants' brief. We expressly recede from any inference that the ruling in Conrad is applicable to an uncompleted project.
From our examination of the record in the case sub judice, we are unable to determine whether or not the project had been completed at the time of foreclosure by GAMI of its mortgage or whether or not there was any retainage or undisbursed contract funds held by GAMI upon completion, if there was completion. The summary judgment is affirmed as to its denial of a mechanic's lien but is reversed as to its denial of an equitable lien and the cause is remanded to the trial court for further proceedings consistent herewith.
AFFIRMED in part and REVERSED in part.
SMITH and MELVIN, JJ., concur.