IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

JAX UTILITIES
MANAGEMENT, INC.,

     Appellant,
                             CASE NO. 1D14-664

v.

HANCOCK BANK, A FOREIGN
CORPORATION, and
PLUMMER CREEK, LLC, A
FLORIDA CORPORATION,

     Appellees.

_____/

Opinion filed June 11, 2015.

An appeal from the Circuit Court for Duval County.
Waddell A. Wallace, Judge.

Diane G. Cassaro, Jacksonville; David S. Wainer, III of Ford, Miller & Wainer, P.A., Jacksonville, for Appellant.

Matthew J. Conigliaro of Carlton Fields Jorden Burt, P.A., Tampa, and Jason A. Perkins of Carlton Fields Jorden Burt, P.A., Orlando, for Hancock Bank, a Foreign Corporation; Lawrence J. Hamilton, II and Barbara Cocciola of Holland & Knight, LLP, Jacksonville, for Plummer Creek, LLC, a Florida Corporation.

ON MOTION FOR REHEARING OR CLARIFICATION

LEWIS, C. J.

     We deny Appellant's Motion for Rehearing or Clarification, but we

withdraw our previously issued opinion and substitute this opinion in its place.

Appellant, Jax Utilities Management, Inc. ("Jax"), challenges the trial court's entry of a final summary judgment in favor of Appellee, Hancock Bank, arguing that the trial court erred by holding that (1) the statute of limitations set forth in section 95.11(5)(b), Florida Statutes (2011), barred Jax's equitable lien claim, and (2) section 713.3471, Florida Statutes (2011), precluded Jax's common law claims of equitable lien and unjust enrichment. For the reasons that follow, we affirm.

## BACKGROUND

On December 29, 2011, Jax brought an action against Appellees based on a failed housing development project. In an Amended Complaint, Jax asserted a breach of contract claim against Plummer Creek, LLC, (Count I) and equitable lien and unjust enrichment claims against Hancock Bank (Counts II and III, respectively). Hancock Bank moved for summary judgment based upon its affirmative defenses that section 95.11(5)(b), Florida Statutes, barred Jax's equitable lien claim and section 713.3471, Florida Statutes, precluded both of Jax's common law claims.

The parties' summary judgment evidence established in part the following: In December 2005, Plummer Creek, as owner, and Jax, as contractor, entered into a Standard Form Agreement for the development of the project, which entailed the

2

construction of "429 builder lots and amenities." In January 2006, Plummer Creek, as borrower, and Peoples First Community Bank ("Peoples First"), as lender, entered into a Loan Agreement to fund the development. The Loan Agreement was for the principal amount of $15,975,000 and was to be evinced by a Note and used "to finance the purchase of land . . . and to construct improvements thereon for the engineering, planning and development of 429 single family building lots and other improvements that will comprise Plummer Creek Subdivision, together with such other improvements necessary or desirable to service the Project." Under the Loan Agreement, Plummer Creek was required to make scheduled payments to Peoples First and to submit pay requests. Plummer Creek's failure to make a scheduled payment, a material adverse change in Plummer Creek's financial condition, or any one of the other enumerated events constituted a default under the Loan Agreement. Between 2006 and 2009, Plummer Creek performed its obligations under the Loan Agreement.

On May 28, 2009, however, Plummer Creek's sole source capital, Stokes Land Group, was informed by its investors that they would no longer fund the project. On June 1, 2009, Stokes Land Group informed Peoples First that it was no longer able to provide capital and make payments on the loan in light of its investors' decision. As such, in June 2009, Peoples First notified Plummer Creek

3

that it would cease making further advances under the Loan Agreement. On June 27, 2009, Plummer Creek missed an interest payment. Although on June 30, 2009, Jax submitted two pay applications to Plummer Creek, in the amounts of $11,922.98 and $468,680.10, Plummer Creek failed to pay them and failed to submit them to Peoples First. In December 2009, pursuant to a Purchase and Assumption Agreement with the Federal Deposit Insurance Corporation as receiver of Peoples First, Hancock Bank assumed Peoples First's assets and liabilities, including the Note, Mortgage, and Loan Documents relating to the subject property. On March 21, 2011, Hancock Bank initiated foreclosure proceedings against the project. In September 2011, Hancock Bank obtained a Final Judgment of Foreclosure against Plummer Creek in the amount of $18,884,800.38; and in January 2012, a Certificate of Sale and Certificate of Title were filed. Based upon evidence relating to Construction Acceptance Checklists, Jax claimed that its last day on the job was June 20, 2009, while Hancock Bank claimed it was May 14, 2010.[1]

The trial court entered a Final Summary Judgment in favor of Hancock Bank. The trial court concluded that Jax's equitable lien claim was barred by the

---

[1] During the course of the proceedings, the trial court entered a Consent for Final Judgment in favor of Jax against Plummer Creek in the amount of $476,523.08 in principal, plus interest and costs for a total of $587,737.70, which shall bear interest.

one-year statute of limitations set forth in section 95.11(5)(b), Florida Statutes, regardless of which party's position about Jax's last day on the job was correct. In doing so, the trial court rejected Jax's argument that the statute of limitations did not begin to run until the equitable lien claim accrued upon the initiation of the foreclosure proceeding. The trial court further concluded that Jax's equitable lien and unjust enrichment claims were precluded by section 713.3471, Florida Statutes, and reasoned that the Legislature clearly intended to alter the common law and that the statute is so repugnant to Jax's common law claims that they cannot coexist. This appeal followed.

## ANALYSIS

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Haynes v. Universal Prop. & Cas. Ins. Co., 120 So. 3d 651, 653 (Fla. 1st DCA 2013). An order granting a motion for summary judgment is reviewed *de novo*. Id. Similarly, a trial court's interpretation of a statute is reviewed *de novo*. M.D.C. v. B.N.M.J., 117 So. 3d 489, 490 (Fla. 1st DCA 2013).

Jax first argues that the statute of limitations set forth in section 95.11(5)(b), Florida Statutes, began to run not from the last furnishing of labor, services, or material, but from the initiation of the foreclosure proceeding. We disagree.

"Except as provided in subsection (2) [fraud and products liability] and in s. 95.051 [tolling] and elsewhere in these statutes, the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues." § 95.031, Fla. Stat. (2011). "A cause of action accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. "An action to enforce an equitable lien arising from the furnishing of labor, services, or material for the improvement of real property" must be commenced within one year. § 95.11(5)(b), Fla. Stat. (2011).

By its plain language, section 95.11(5)(b) requires that a claim for equitable lien be brought within one year of the last furnishing of labor, services, or material for the improvement of real property. Roehner v. Atl. Coast Dev. Corp., 356 So. 2d 1296, 1297 (Fla. 4th DCA 1978) ("This is an appeal from a denial of a motion to dismiss a complaint to enforce an equitable lien, said complaint filed in excess of one year after the last furnishing of labor, services or material. We reverse upon the authority of s 95.11(5)(b) (Fla.Stat.1975) which unequivocally requires such a

suit to be filed within one year after the last furnishing of labor, services or material for the improvement of real property."); see also Westburne Supply, Inc. v. Cmty. Villas Partners, Ltd., 508 So. 2d 431, 434-35 (Fla. 1st DCA 1987) (finding that the one-year statute of limitations on the appellant's equitable lien claim began running on the day the last materials were supplied for the construction of an apartment complex, and noting that "an equitable lien arises at the time of the transaction from which it springs"); Haney v. Holmes, 364 So. 2d 81, 82 (Fla. 2d DCA 1978) (explaining that if section 95.11(5)(b) were the applicable provision, it would have barred the appellant's claim for foreclosure of an equitable lien where the complaint alleged that the last work on the real property was performed on or about February 27, 1975, and the complaint was filed on September 3, 1976).

Here, Jax claims that its last day on the job was June 20, 2009, while Hancock Bank claims it was May 14, 2010. In either case, section 95.11(5)(b)'s one-year statute of limitations, which runs from the last furnishing of labor, services, or material for the improvement of real property, had long expired by the time Jax initially filed its complaint in December 2011. Therefore, the trial court correctly determined that regardless of whether Jax's last day of work on the project was on June 20, 2009, as Jax argued, or on May 14, 2010, as Hancock

7

Bank contended, Jax filed its December 29, 2011, lawsuit too late as it did not bring suit within the one-year period provided by section 95.11(5)(b). As such, like the trial court, we reject Jax's argument that the statute of limitations period ran from when Hancock Bank initiated foreclosure proceedings.

<u>Construction of Section 713.3471</u>

Turning now to Jax's second argument, Jax contends that the trial court misapplied section 713.3471, Florida Statutes, to preclude common law relief under the facts of this case. Hancock Bank, on the other hand, argues that the trial court correctly applied section 713.3471 to preclude Jax's common law claims of equitable lien and unjust enrichment because the statute expressly precludes such claims and is so repugnant to the existence of common law remedies that the two cannot coexist. However, both parties agree that this is an issue of first impression for a Florida appellate court. For the reasons that follow, we agree with Hancock Bank.

Section 713.3471, Florida Statutes (2011), was enacted in 1992, is part of the Construction Lien Law, and is titled "Lender responsibilities with construction loans." Section 713.3471(2) defines a lender's responsibilities to a contractor for construction work where the lender decides to stop making advances prior to the

distribution of all the construction loan funds. Subsection (2)(a) sets forth a

lender's duties and provides for no liability if those duties are satisfied:

> (2)(a) Within 5 business days after a lender makes a final determination, prior to the distribution of all funds available under a construction loan, that the lender will cease further advances pursuant to the loan, the lender shall serve written notice of that decision on the contractor and on any other lienor who has given the lender notice. The lender shall not be liable to the contractor based upon the decision of the lender to cease further advances if the lender gives the contractor notice of such decision in accordance with this subsection and the decision is otherwise permitted under the loan documents.

§ 713.3471(2)(a), Fla. Stat. Subsections (2)(b) and (2)(c) define a lender's liability

where it fails to provide the requisite notice:

> (b) The failure to give notice to the contractor under paragraph (a) renders the lender liable to the contractor to the extent of the actual value of the materials and direct labor costs furnished by the contractor plus 15 percent for overhead, profit, and all other costs from the date on which notice of the lender's decision should have been served on the contractor and the date on which notice of the lender's decision is served on the contractor. The lender and the contractor may agree in writing to any other reasonable method for determining the value of the labor, services, and materials furnished by the contractor.

> (c) The liability of the lender shall in no event be greater than the amount of undisbursed funds at the time the notice should have been given unless the failure to give notice was done for the purpose of defrauding the contractor. The lender is not liable to the contractor for consequential or punitive damages for failure to give timely notice under this subsection. The contractor shall have a separate cause of action against the lender for damages sustained as the result of the lender's failure to give timely notice under this subsection. Such separate cause of action may not be used to hinder or delay any

9

foreclosure action filed by the lender, may not be the basis of any claim for an equitable lien or for equitable subordination of the mortgage lien, and may not be asserted as an offset or a defense in the foreclosure case.

§ 713.3471(2)(b)-(c), Fla. Stat.

To discern legislative intent, courts first look to the plain language of a statute, whereby "[t]he plain and ordinary meaning of the words of a statute must control." Marrero v. State, 71 So. 3d 881, 886-87 (Fla. 2011). Section 713.3471(2) governs construction loan lenders who, prior to the distribution of all funds available under a loan, make a final determination that they will cease further advances. Such lenders must give timely notice to the contractor and any other lienor who has given the lender notice. If the lender complies with this notification duty (and its decision is permitted under the loan documents), it has no liability to the contractor or lienor. § 713.3471(2)(a), Fla. Stat.

If the lender fails to comply with this notification duty, it is liable to the contractor through a statutory cause of action, but the damages are calculated as prescribed by the statute, unless the noncompliance was intended to defraud the contractor. § 713.3471(2)(b)-(c), Fla. Stat. Furthermore, where the lender fails to comply with the notice requirement, the statutory claim may not interfere with any foreclosure action and "may not be the basis of any claim for an equitable lien or for equitable subordination of the mortgage lien . . . ." § 713.3471(2)(c), Fla. Stat.

10

In effect, section 713.3471(2) provides benefits and burdens to lenders and contractors. Prior to the statute's enactment in 1992, case law prohibited lenders from misleading contractors about advances, but did not impose an obligation to notify contractors of a decision to cease making advances. See Giffen Indus. of Jacksonville, Inc. v. Se. Assocs., Inc., 357 So. 2d 217 (Fla. 1st DCA 1978); J. G. Plumbing Serv., Inc. v. Coastal Mortg. Co., 329 So. 2d 393 (Fla. 2d DCA 1976). Section 713.3471(2) changed the common law by imposing on lenders an affirmative duty to notify, thereby protecting contractors from continuing work on projects without notice that further funds will not be advanced. See Whitehead v. Tyndall Federal Credit Union, 46 So. 3d 1033, 1035-36 (Fla. 1st DCA 2010) ("The obvious purpose of [section 713.3471(2)] is to prevent exactly what occurred here: the unjust termination of payments to a contractor who continues work, without any notice from the lender that payments will be terminated."). Section 713.3471(2) constitutes comprehensive regulation in this narrow area.

While courts generally presume that the common law remains in effect when a statute is enacted in derogation of the common law, this presumption is inapplicable where the statute expressly says otherwise or "is so repugnant to the common law that the two cannot coexist." Major League Baseball v. Morsani, 790 So. 2d 1071, 1077-78 (Fla. 2001). Section 713.3471 does both. Section

11

713.3471(2) expressly immunizes lenders who provide notice, prescribes the damages where notice is not provided, and states that the cause of action cannot become the basis for an equitable lien claim. Moreover, a common law claim would conflict with the statute. If a lender complies with the statute, it has no liability. If the lender fails to comply, a contractor may seek damages as prescribed by the statute.

Notably, section 713.3471 lacks a provision expressly preserving common law remedies. The Legislature routinely includes such provisions where it does not intend to displace the common law, and the omission of such a provision reinforces the conclusion that section 713.3471 displaces the common law remedies. See, e.g., § 83.808(1), Fla. Stat. (2012) ("Nothing in ss. 83.801-83.809 shall be construed as in any manner impairing or affecting the right of parties to create liens by special contract or agreement nor shall it in any manner impair or affect any other lien arising at common law . . . ."); § 403.191(1), Fla. Stat. (2011) ("Nothing contained herein shall be construed to abridge or alter rights of action or remedies in equity under the common law . . . ."); § 403.760(5)(e), Fla. Stat. (2011) ("Nothing in this section shall affect or modify in any way the obligations or liability of any person under any other provisions of state or federal law, including common law . . . ."); § 494.002, Fla. Stat. (2011) ("Sections 494.001-494.0077 do

not limit any statutory or common-law right of any person to bring any action in any court for any act involved in the mortgage loan business or the right of the state to punish any person for any violation of any law."); § 517.241(2), Fla. Stat. (2011) ("Nothing in this chapter limits any statutory or common-law right of a person to bring an action in a court for an act involved in the sale of securities or investments, or the right of the state to punish any person for a violation of a law."); § 607.0833, Fla. Stat. (2011) ("Nothing in this section shall be deemed to deny, limit, or restrict the powers of guaranty or warranty of any corporation at common law or under any statute.").

Here, Peoples First was a construction loan lender that decided to cease further advances before all the loan funds had been distributed. Though the record does not indicate that Peoples First ever served notice on Jax pursuant to section 713.3471(2), Jax elected not to bring a statutory claim and instead sued Hancock Bank (as successor-in-interest to Peoples First) for equitable lien and unjust enrichment. However, we find that section 713.3471(2) precluded Jax's common law claims and the trial court properly entered summary judgment in Hancock Bank's favor on this issue because the plain language of section 713.3471(2) evinces a legislative intent to displace the common law remedies and the statute is so repugnant to common law remedies that the two cannot coexist.

CONCLUSION

Accordingly, the trial court correctly held that the statute of limitations set forth in section 95.11(5)(b), Florida Statutes, barred Jax's equitable lien claim and section 713.3471, Florida Statutes, precluded Jax's common law claims of equitable lien and unjust enrichment.

Therefore, we AFFIRM the trial court's Final Summary Judgment.

MARSTILLER and OSTERHAUS, JJ., CONCUR.